FRANK F. HOLBROOK *v.* J. J. QUINLAN & COMPANY.

May Term, 1910.

Present:  ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS,  JJ.

Opinion filed May 8, 1911.

*Assumpsit—Stock Contracts—Removal of Causes to Federal Court
—Disposition in Federal Court—Effect—State Court's Re-
stored Jurisdiction—Res Adjudicata—Remittitur—Nature and
Effect—Estoppel—Election of Remedies—"Cause of Action"
— Evidence— Admissibility—Similar Transactions—Record
of Previous Trial—Extrinsic Evidence—Method of Keeping
Books—Effect—Exceptions—Defective Record—Defective Ob-
jection—Objection not Made Below—Admissions—Pleadings
—Effect as Admissions.*

When a case is removed from a state court to a Federal court, the whole
case goes, leaving no part of it or of its subject-matter in the state
court, which thereafter can proceed no further therein until by some
proceeding its jurisdiction is restored.

Where a cause is removed from a state court to a Federal court and there
disposed of otherwise than on its merits, the state court's jurisdiction
is restored by a new suit on the same cause of action, although the
sum declared for in the second suit is so small that the suit cannot be
again removed; nor is it necessary that the actual dismissal in the
Federal court precede the beginning of the second suit.

Where a suit in assumpsit on eight distinct contracts was removed from
the state court to the Federal court, where plaintiff had verdict and
judgment, but, on appeal, the circuit court of appeals held that the
declaration did not have counts proper to sustain a recovery for breach
of two of the contracts, nor, in the circumstances, could plaintiff stand
on his rescission of those contracts and his right to recover the money
paid thereunder, on which theory he had recovered $1,063.30 below,
and ordered that the judgment be reversed unless plaintiff remitted
that sum, which he did, and took judgment for the amount so reduced
which was paid, the state court had jurisdiction of a suit brought to
recover for breach of those two contracts, and thereon plaintiff might
recover, notwithstanding the proceedings in the Federal courts.

In the trial of an action of assumpsit on eight distinct contracts, plaintiff first claimed to recover on two of the contracts on the theory of defendant's breach of binding contracts, but, on objection, abandoned that theory and stood on his rescission of the two contracts and his right to recover the money paid thereunder, on which theory he had judgment which, on appeal, was reversed because the declaration had no count that would support recovery for breach of those two contracts, and because, in the circumstances, plaintiff could not rescind the contracts and recover the money paid thereunder. *Held,* that this was not *res adjudicata* of plaintiff's right to recover for breach of the contracts, but only of a question of pleading, nor was plaintiff thereby estopped by an election of remedies from maintaining an action for breach of the contracts.

A suit for damages for breach of a contract and a suit for the recovery of money paid thereunder are inconsistent remedies, since one affirms and the other rescinds the contract.

The pursuit of a remedy that does not exist cannot constitute an estoppel by election of remedies.

Anciently a *remittitur damna* had the force of a *retraxit* and constituted a bar to any further action for the same cause; but in recent times that effect has been so modified that now a *remittitur* of part of the damages, made to save a reversal, amounts only to a discontinuance, and an agreement not to proceed further in that suit in respect of the particular cause of action covered by the *remittitur*.

The breach of a binding contract, and the refusal, after rescission of the same contract, to refund money paid thereunder, though effected by the same transaction, create different causes of action.

In assumpsit for the breach of certain contracts for the purchase and sale of stocks, where the issue was whether the person with whom plaintiff made the contracts in question was defendant's agent in that business, the mere fact that the book account of the transactions was entered as between the agent and plaintiff and kept on the agent's private ledger, though evidence against plaintiff, is not necessarily conclusive of his right of recovery.

An exception involving the consideration of evidence will be ignored, where the evidence is not a part of the record for that purpose.

In assumpsit for breach of two contracts for the purchase and sale of stocks, where an issue was whether the person with whom plaintiff made the contracts was defendant's duly authorized agent in that business, a special verdict, rendered in a previous action of assumpsit between the same parties for breach by defendant of six other contracts, made by plaintiff with the same person and in the same circumstances, that he was defendant's agent in making those six contracts, was admissible, regardless of whether all the issues in the two suits were the same, the evidence tending to show that defendant's relation to

its claimed agent and to the business by him conducted was the same during all of the time covered by the eight contracts.

But that plaintiff, in the six contracts, relied on the fact that the person with whom he made them was acting as defendant's agent had no tendency to show that he so relied in making the other two contracts.

An exceptor will be confined in this Court to the objection that he stated below.

In assumpsit for breach of certain contracts for the purchase and sale of stocks, made in an office that, together with the business there conducted, the evidence tended to show was defendant's, where an issue was whether the person with whom plaintiff made the contracts was defendant's duly authorized agent in that business, evidence was admissible tending to show that, to plaintiff's knowledge, the literature, arrangements, furnishings, and methods of business in defendant's offices in two other places, which were conceded to be branch offices of defendant, managed by it through a local agent, were the same as in the office where the contracts in question were made, regardless of how plaintiff obtained that knowledge.

Since plaintiff's evidence tended to show that the business conducted in the office where he made the contracts in question was a branch of defendant's business, plaintiff was properly allowed to testify that he relied on defendant and on the dividends posted on the board in said office, and on the truth of the statement printed at the head of certain blanks used there to the effect that said office was a branch office of defendant.

In assumpsit for breach of certain contracts for the purchase and sale of stocks, plaintiff, for the purpose of showing that at all times he kept sufficiently "margined" the stock that defendant had contracted to purchase, was properly allowed to testify from a book issued by defendant, and bearing its name, how the price of a certain stock covered by the contracts fluctuated during the time in question, and that the letters "H" and "L" at the head of the columns in the book signified respectively, "high" and "low", and that "Div." meant "dividend", which was stated to be five per cent.

Where the issue was whether the methods of conducting business at defendant's branch office in another place was the same as in the office where certain contracts in question were made, which defendant claimed was not its office, and as an instance of the difference in methods the manager of defendant's branch office testified in direct examination that he was required to make a full remittance to defendant each night, in cross-examination plaintiff was properly allowed to show that customers sometimes left with the witness money that was not so remitted.

A suit in assumpsit on eight distinct contracts was removed from the state court to the Federal court where plaintiff therein had verdict and judgment, but, on appeal, the circuit court of appeals ordered the

judgment reversed unless plaintiff remitted the amount of his recovery in respect of two of the contracts, which he did, took judgment for the sum so reduced, which was paid, and brought suit in the state court for breach of the two contracts covered by the *remittitur*. *Held*, in the second suit in the state court, that the general verdict and plaintiff's specifications in the case tried in the Federal court, and the opinion of the circuit court of appeals, were admissible in evidence, especially since all the facts relative to the former trial, judgment, reversal, and *remittitur* are alleged and relied on in defendant's plea in bar, which constituted a judicial admission of those facts.

So far as the opponent may desire to take advantage of them, the pleadings in a case are, for the purpose of use in that suit, judicial admissions, a waiver of all controversy, and a limitation of the issues.

Where the record of the judgment in a former suit is admissible in evidence and does not show the exact points litigated, extrinsic evidence is admissible to show what was concluded by the judgment.

It is not proper to read to the jury an admissible record of a former trial, as that is for the court, which should instruct the jury as to what is shown by the record and how the case on trial is affected thereby.

An available exception to the admission of evidence must indicate the precise point on which the court is asked to rule.

Assumpsit. Pleas, the general issue and special pleas in bar. Trial by jury at the September Term, 1909, Orleans County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. See 162 Fed. 272.

.*Elisha May* for the defendant.

When a suit is removed from a state court to a Federal court, a part of the subject-matter thereof cannot be split, dropped, or reserved, for another suit. 18 Ency. Pl. & Pr. 349; *Whitney* v. *Clarendon*, 18 Vt. 252; *Bullard* v. *Thorpe*, 66 Vt. 599. The acceptance of a general offer of judgment and entry thereof, concludes the party accepting it from bringing a new action for any part of the claim embraced in the complaint and which might have been litigated in the former action. *Davies* v. *N. Y.*, 93 N. Y. 250; 24 Am. & Eng. Enc. Law, 714. If plaintiff put in evidence as to the two trades he is estopped. 1 Herman, Estoppel, §211; *Phillips* v. *Berick*, 16 John. 136. By entering the *remittitur* in respect of the two contracts now in suit, plaintiff is estopped from ever thereafter suing thereon.

*Haskell* v. *Bowen,* 44 Vt. 585; *Rea* v. *Harrington,* 58 Vt. 181; *Kennon* v. *Gilman,* 131 U. S. 22; *Yawkey* v. *Richardson,* 9 Mich. 59; *Baltimore R. R. Co.* v. *Fulton,* 59 Ohio 575; *Baughman* v. *Nat. Water W. Co.,* 58 Mo. App. 576; *Kingsborger* v. *Richmond,* 158 U. S. 41; *Tarbell* v. *Richmond,* 60 Vt. 486; *Iron R. R. Co.* v. *Mowrey,* 36 Ohio 418; *Lauman* v. *Lewiston,* 18 N. Y. 493; *Ekstran* v. *Hall,* 90 Me. 186; *Ft. Worth Ry.* v. *Measles,* 81 Tex. 474; *Lawrence* v. *Church,* 129 N. Y. 635, 29 N. E. 106; *Ry. Co.* v. *Davis,* 69 Miss. 444.

*Howe & Hovey* for the plaintiff.

It is contended by the defendant that the plaintiff ought to have tried to amend his declaration in the circuit court by inserting special counts on transactions 288 and 294. This could not have been done. The new counts in special assumpsit would have been for a new cause of action. *Dewey* v. *Nicholas,* 44 Vt. 24; *Green* v. *Starr,* 52 Vt. 426; *McDermid* v. *Tinkham,* 53 Vt. 615; *Brodeck* v. *Hierschfield,* 57 Vt. 12; *Seymour* v. *Brainerd,* 66 Vt. 320; *Grand Isle* v. *Kinney,* 70 Vt. 381; *Estabrooks* v. *Ins. Company,* 74 Vt. 202.

A *remittitur* is not a release but amounts only to a discontinuance. *Gayden* v. *L. N. N. T. R. R. Co.,* 39 La. Ann. 269; *School Dist.* v. *Cook,* 47 Mich. 112; *Foley* v. *Cudahy Packing Co.,* 119 Iowa 246; *C. C. C. & L. R. R.* v. *Lawler,* 99 Ill. App. 36. Nor has plaintiff made an election of remedies. A person who prosecutes an action or suit based upon a remedial right that he erroneously supposes he has and is defeated because of the error, has not made any election of remedies and is not precluded from prosecuting another action based upon an inconsistent remedial right. *Priest* v. *Foster,* 69 Vt. 417; *Walker* v. *Davis,* 1 Gray 506; *Snow* v. *Alley,* 156 Mass. 193; *Fuller-Warren Co.* v. *Harter,* 110 Wis. 80; 84 Am. St. Rep. 867; 53 L. R. A. 603; *Agar* v. *Winslow,* 123 Cal. 587, 69 Am. St. Rep. 84; *Bunch* v. *Grave,* 111 Ind. 351; *Shanahan* v. *Coburn,* 128 Mich. 692. The special verdicts were admissible. *Perkins* v. *Walker,* 19 Vt. 144; *Cabot* v. *Washington,* 41 Vt. 168; *Spencer* v. *Dearth,* 43 Vt. 98; *Lindsey* v. *Daniel,* 46 Vt. 144; *Porter* v. *Guilt,* 47 Vt. 620; *Morey* v. *King,* 49 Vt. 304; *Currier* v. *Rich-*

*ardson,* 63 Vt. 617; *Bacon* v. *Hunt,* 72 Vt. 98; *Cromwell* v. *County of Sac,* 94 U. S. 351; *Southern Pacific Ry. Co.* v. *United States,* 168 U. S. 1; *Heffron* v. *Knickerbocker,* 51 Ill. App. 291.

Plaintiff's specifications in the Federal court were admissible. Where a record of a former judgment does not show the precise point litigated parol evidence is admissible to show it, and when this is shown the judgment is as conclusive as if all was shown by the record. *Isaac* v. *Clark,* 12 Vt. 692; *Gray* v. *Pingrey,* 17 Vt. 419; *Perkins* v. *Walker,* 19 Vt. 144; *Atwood* v. *Robbins,* 35 Vt. 530.

POWERS, J. The plaintiff patronized a "Stock Exchange" conducted at Newport by one Charles N. Brady. The result was not altogether unusual,—he lost his money. He brought a suit against this defendant returnable to Orleans County court, predicating his claim upon the ground that this stock proposition was the defendant's, and that Brady was its agent. This suit was, on the defendant's motion, (it being a Maine corporation) removed to the Federal court and was therein tried at its May Term, 1907. The declaration in that suit counted specially on six different stock transactions, each bearing a separate number and date, and contained a general count in assumpsit. When, at that trial, the plaintiff attempted to give evidence of the two trades here in suit, numbered 288 and 294 and dated April 6, 1905 and April 10, 1905, respectively, the defendant objected on the ground that there were no special counts in the declaration covering these trades, and that recovery could not be had thereon under the general count. The circuit court having intimated an opinion that no recovery could be had for the damages sought—which included dividends and rights which had accrued on stocks purchased—without special counts upon the respective contracts, the plaintiff, without attempting to amend, abandoned his claim for damages for the breach of these two special contracts, and attempted to recover the money paid in upon them,—insisting that, in the circumstances, he could rescind the contracts and recover the consideration paid under the general count. In this position he was sustained by the circuit court and he amended his specification accordingly. The jury rendered a verdict for the

plaintiff which included the amounts paid in on these two trades and interest thereon—$1,063.30. The defendant carried the case to the circuit court of appeals which handed down a decision in May, 1908, holding that the declaration did not contain proper counts to warrant a recovery for damages for breach of the special contracts embodied in these two trades, and that the plaintiff could not rescind and recover the money paid in. The judgment order contained the following provision: "It is hereby ordered, adjudged and decreed that the judgment of said circuit court be and it hereby is reversed unless the plaintiff remits $1,063.30 within such time as may be fixed by the circuit court. If such *remittitur* be made, the judgment is affirmed." The plaintiff seasonably complied with this requirement by filing a *remittitur* of the amount specified, and, a few days later, the defendant filed a "protest" wherein it insisted that if the plaintiff intended to make further claim for any of the items included in his specification, he should do so in the circuit court, and that no other court had or could have jurisdiction over them or any of them. The circuit court gave no heed to this and on June 26, 1908, issued execution for the amount of the original judgment less the amount remitted. This execution was promptly paid.

The case in hand is an action of special assumpsit on the two trades above referred to—Nos. 288 and 294. The defendant (having first pleaded a special plea which is not here involved) pleaded the general issue and a special plea in bar. The latter set out all the facts regarding the first suit as above recited.

The defendant filed a motion to remove this case to the circuit court and objected to all proceedings in the state court, on the ground that these two transactions were finally settled and determined in the first suit; and if not, were finally removed to the circuit court and only triable therein. At the close of the evidence the defendant moved for a verdict on the ground that the state court had no jurisdiction of the subject-matter, that he was estopped by the proceedings in the first suit, and that the matters involved were *res adjudicata*. On all these points the court ruled against it and proper exceptions were reserved.

We agree with the defendant that when a cause is removed

to the Federal court, it all goes. No part of the suit or the subject-matter thereof remains in the state court. *Friedman* v. *Israel*, 26 Fed. 804; *Company* v. *Carter*, 88 Fed. 707; *Kern* v. *Huidekoper*, 103 U. S. 491, 26 L. Ed. 354; *Barney* v. *Latham*, 103 U. S. 205, 26 L. Ed. 514. The defendant's position, however, that the removal *finally* transfers jurisdiction to the Federal court finds support only in *B. & O. Railroad Co.* v. *Fulton*, 59 Oh. St. 575, 44 L. R. A. 520, and the dissenting opinion in *McIver* v. *Fla. Cent. & P. R. Co.*, cited below. In the former case, it is expressly held that when a case is removed to and thereafter disposed of in the Federal court—even if such disposal is otherwise than on the merits,—the plaintiff cannot recommence the action in the state court, citing *Cox* v. *E. Tenn. V. & G. R. Co.*, 68 Ga. 446. It may safely be asserted that after a cause has been removed, the state court can proceed no further with it or any part of it until its jurisdiction is in some way restored. *Carson* v. *Dunham*, 121 U. S. 421, 30 L. Ed. 992. But its jurisdiction *is* restored when the case is disposed of in the Federal court otherwise than on its merits. This proposition is abundantly supported by the cases. Thus in *Hooper* v. *A. K. & N. Ry. Co.*, 106 Tenn. 28, 53 L. R. A. 931, it is held that one may take a voluntary non-suit in an action properly removed to the Federal court and begin another action in the state court—criticising *B. & O. R. Co.* v. *Fulton, supra.* See also, *Ill. Cent. R. Co.* v. *Benz*, (Tenn.) 58 L. R. A. 690. Again, in *Young* v. *So. Bell T. & T. Co.*, (S. C.) 7 L. R. A. (N. S.) 501, it is held that the removal does not confer such exclusive jurisdiction upon the Federal court that, upon a discontinuance, the plaintiff could not begin a new action in the state court. And in *McIver* v. *Fla. Cent. &c. R. Co.*, 110 Ga. 223, 65 L. R. A. 437, it is held that one may become nonsuit or voluntarily dismiss an action properly removed, and thereafter begin a new suit on the same cause of action in the state court. The opinion in this case points out the fact that *Cox* v. *E. Tenn. V. & G. R. Co.*, 68 Ga. 446, is not an authority to the contrary.

In *Stevenson's Admr.* v. *Ill. Cent. R. Co.*, 117 Ky. 855, 4 Ann. Cas. 890, it is held that an action dismissed in the Federal court to which it has been removed, does not prevent a state

court from assuming jurisdiction in a new suit on the same
cause of action. To the same effect are *Rodman* v. *Mo. Pac.
Ry. Co.*, (Kan.) 59 L. R. A. 704, *Gassman* v. *Jarvis*, 100 Fed.
146,—wherein *B. & O. R. Co.* v. *Fulton* is criticised with some
severity—*Foley* v. *Cudahy Packing Co.*, 119 Ia. 246; *Fleming*
v. *Railroad*, 128 N. C. 80, and other cases to be found in 17
Dec. Dig. under "Removal of causes," § 109. And it makes
no difference if the sum declared for in the new suit is so small
that the suit cannot be removed. *McIver* v. *R. R. Co.*, *Hooper*
v. *Ry. Co.*, *Young* v. *So. &c Co.*, *supra.* It is true, as argued
by the defendant, that the court will not allow one to be tricked
out of his right of removal,—*Yawkey* v. *Richardson*, 9 Mich.
529,—but here nothing of the kind was attempted or accom-
plished. The plaintiff was ready enough to try his whole case
in the Federal court, but the defendant's objection stood in
the way. Rather than risk an amendment, the plaintiff waived
a good part of his claim under these two trades, and tried to
recover under his general count. This attempt the defendant
rendered unavailing by taking the case to the court of appeals
and there prevailing. Surely, in these circumstances the de-
fendant cannot consistently claim that it has been tricked out
of its rights.

Nor was this suit prematurely · brought. For, without
saying when this action should be considered to have been
commenced and without saying whether or not the pendency
of a former action should be pleaded in advance of a plea to
the merits, it is not necessary that the actual dismissal in the
Federal court should precede the commencement of the second
action. *Dana & Co.* v. *Blackburn*, 121 Ky. 706, 90 S. W. 237.
See also, *Howell* v. *Howell*, (Ala.) 54 So. 601.

When the former case was removed, the plaintiff first
claimed to recover therein just what he now sues for; but as
we have seen he finally sought to prevail upon an entirely dif-
ferent cause of action. His first claim was based on the theory
of a binding contract broken by the defendant; his last upon
a rescinded contract. The first was not disposed of on its
merits; the last was held to be unfounded. Nothing affecting
the cause of action now declared upon was then and there de-
cided except a question of pleading. That judgment is only

conclusive on the question whether the plaintiff could rescind these two contracts and recover the money paid in. That is the only *res* adjudicated. Nor is the plaintiff estopped by an election of remedies. Though a suit for damages and a suit for a recovery of the money paid in are inconsistent within the rule of *White* v. *White*, 68 Vt. 161,—since one affirms and the other rescinds the contract,—the plaintiff is not precluded, since it turned out that he never had the remedy he sought to enforce, and the pursuit of a remedy which does not exist is no bar. *Priest* v. *Foster*, 69 Vt. 417, *Whipple* v. *Stevens*, (R. I.) 57 Atl. 375; *Bunch* v. *Grave*, 111 Ind. 351; *Agar* v. *Winslow*, (Cal.) 69 Am. St. R. 84; *Zimmerman* v. *Robinson & Co.*; (Ia.) 5 Ann. Cas. & 960 n.; *Rowell* v. *Smith*, (Wis.) 3 Ann. Cas. 773; *Clark* v. *Heath*, (Me.) 8 L. R. A. (N. S.) 144; *Harrill* v. *Davis*, (C. C. A.) 22 L. R. A. (N. S.) 1153 and n.

The defendant says that the plaintiff's voluntary *remittitur* precludes him from maintaining this action. It is not denied (and could not be) that the *remittitur* was, in a legal sense, voluntary. The effect of it is to be determined.

Though the exact nature of a *remittitur damna*, as known to the early English courts, is somewhat obscure, it seems to have been a final relinquishment or surrender of the damages awarded. Its first application was to cases where the jury awarded greater damages than were declared for. It is now sometimes so defined,—34 Cyc. 1207—and frequently so used. In the earliest of such cases, the term used is *release*. Thus in *Persival* v. *Spencer*, Yelv. 45, wherein a verdict was given for more than was declared for, it was said that if the plaintiff had "released" the excess, all would have been well; and in *Auger* v. *Brookheu*, 2 Show. 56, the same term was used. Later on, though it is uncertain just when, the Latin term was adopted; though it does not appear in "Jacob's New Law Dictionary", which was published in 1729 and purports to contain the "whole law and the practice thereof," it is used in *Chevley* v. *Morris*, 2 Black. 1301, and *Ray* v. *Lister*, Andr. 384. It was said in *Planter's Bank* v. *Union Bank*, 16 Wall., 21 L. Ed. 473, in speaking of a *remittitur* of this kind: "It is further assigned for error by the defendants that the court allowed the plaintiffs to withdraw a *remittitur* entered by them of part of a verdict obtained

on a former trial of the case. The only objection made in the court below to the allowance was that the *remittitur* was an acknowledgement of record that the amount remitted was not due. There had been a former trial in which the plaintiffs had obtained judgment for $113,296.01, with five per cent interest from Nov. 25, 1863. This was a larger amount of interest than the peititon of the plaintiff had claimed, and they entered on the judgment a *remittitur* of the excess, expressly reserving their rights to the balance of the judgment. Subsequently, a new trial was granted, and it is now contended that the *remittitur* had the effect of a *retraxit*. As it was entered after judgment, such would be its effect if the judgment itself had not been set aside and a new trial granted,"—citing *Bowden* v. *Home*, 7 Bing. 716, 20 E..C. L. 318. It was held in the latter case that a *nolle prosequi* as to part of a claim entered after a judgment for the whole was equivalent to a *retraxit*, and a bar to any future action for the same cause. The Lord Chief Justice said that the case was more like the entry of a *remittitur* after judgment by default than the ordinary entry of *nolle prosequi*, and that "in the case of a *remittitur* of part of the damages, the entry is 'and hereupon the said plaintiff freely here in court remits to the defendant all damages sustained by him the said plaintiff by reason of the not performing the several promises and undertakings in the two last counts of the declaration mentioned; therefore let the defendant be acquitted of such damages so remitted as aforesaid and go thereof without day,' etc. And as the judgment approaches so near in form to that of a *remittitur* we think ourselves bound to give it the same effect which is that of a final giving up of the damages by matter of record."

It thus appears that effect was given to the entry just according to its form, and the conclusion would seem to be that anciently a *remittitur damna* had the force of a *retraxit*, which, as shown in *Sheffer* v. *Perkins & Co.*, 83 Vt. 185, was a final abandonment of the claim.

But whatever may have been the character and effect of the common law *remittitur*, in recent times its use has been much extended and the effect given to it has been correspondingly modified.

Thus it was held in *City of What Cheer* v. *Hines & Co.*, 86 Ia. 231, that when a *remittitur* is filed to prevent a new trial and one is thereafter granted, the party filing the same is not precluded from claiming the property remitted. In *School District* v. *Cook*, 47 Mich. 112, it was held that when one recovered judgment in a justice court for more than one hundred dollars—the limit of a justice's jurisdiction—and remitted the excess to save a reversal, and the case was thereafter appealed and reversed, it could not be claimed in a subsequent trial that the plaintiff had thereby released that much of his demand. Much the same thing was held in *Planter's Bank* v. *Union Bank*, *supra*. In *Gibson* v. *Choteau*, 7 Mo. App. 1, a judgment in ejectment was rendered for the plaintiff upon the condition that he enter a *remittitur* for a part of the lands,—which he did. When he brought a new suit for the lands covered by the *remittitur*, it was held that he was not barred. "A *retraxit*," says the court, "would, of course, conclude him. In that form of entry, the plaintiff voluntarily abandons his cause, and goes further; he admits that he has no cause of action. *Pinner* v. *Edwards*, 6 Rand 675. But the entry in the present case makes no such admission. It amounts simply to an agreement not to proceed further in that suit, as to the particular cause of action. Such an entry is no bar against another suit."

In *Gayden* v. *L. O. T. R. Co.*, (La.) 1 So. 792, it was said that a *remittitur* is in the nature of a discontinuance and is governed by the same rules.

The foregoing views find indirect approval and support in several cases. It was shown in *Sheffer* v. *Perkins & Co.*, *supra*, that an attorney, owing to the limitations of his authority, cannot enter a *retraxit*. But it is generally held that he may, in a prudent regard for the interests of his client, discontinue the suit. *McLaren* v. *McNamara*, 55 Cal. 508; *Davis* v. *Hall*, 90 Mo. 659; *Bacon* v. *Mitchell*, (N. D.) 4 L. R. A. (N. S.) 244, and note. And in *Brown* v. *Mead*, 68 Vt. 215, this Court gave such a discontinuance the effect of a non-suit. It is held in *Mead* v. *Bucklin*, 2 La. 282, and in *Pickett* v. *Ford*, 53 Miss. 702, that an attorney may enter a *remittitur*, and those in *Planter's Bank* v. *Union Bank*, *supra*, and *Bank of Ky.* v. *Ashley*, 2 Pet. 327, were in fact so entered.

With the change in the use and effect of a *remittitur* has come a change in the meaning of the term itself. Were we assured that it was used by the circuit court of appeals in its common law sense, we might feel constrained .to give to it its common law effect. But we have come to use it, not in its common law sense, but in its modern sense,—to denote a mere temporary waiver,—a writing off of so much of the verdict,— an agreement not to proceed further for that particular item in that particular suit. It was in this sense that the term was used by the circuit court of appeals. To hold otherwise would be manifestly unfair to the plaintiff, for justice between the parties only required that the sum erroneously included in the verdict should be eliminated.

If the present rule of this Court, announced in *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, had been followed, this is all the benefit that the defendant would have obtained by a reversal. For, since the only error found by the court of appeals affected the amount of damages, a retrial would have been limited to that issue; the result of which would have been, (had the plaintiff declined to remit) a new judgment limited to the amount of the six trades;—which is just what the plaintiff had after he filed his *remittitur*. It could hardly be claimed that these two trades would be concluded by a new judgment so obtained. So to require that the amount wrongfully included in the verdict should be finally forgiven, would be to give the defendant more than it is fairly entitled to.

It is perfectly apparent that, at the time, the defendant understood that the *remittitur* had the force of a discontinuance, only; for it immediately filed its "protest," hereinbefore referred to, wherein it insists "if the plaintiff is to make any claim for any item or items which were set out in the specifications, he should proceed in the circuit court because no other court had jurisdiction thereof." Surely if the *remittitur* was then thought to have the force of a *retraxit*, this protest was wholly unnecessary.

In the foregoing discussion, we treat the matter as counsel on both sides argue it. It is to be noted, however, that the damages herein recovered were not remitted in the former case. As we have seen, the cause of action there (as the case was finally submitted) was entirely different from the cause

of action here,—though both grew out of the same transaction. This is clearly shown by *Derosia* v. *Ferland*, 83 Vt. 372, wherein it is held that indebitatus assumpsit by a servant to recover for services constructively performed after his wrongful discharge, and a count for damages for a breach of the contract of hiring, are for different causes of action.

The defendant seasonably presented two requests to charge, as follows:

"1. If the business of stock transactions of plaintiff in the office of Mr. Brady at Newport were made the subjects of book account between Brady and Holbrook, and were entered upon Brady's private ledger as the evidence tends to show, then the plaintiff cannot recover."

"2. The evidence is undisputed that the defendant company never received any dividends or rights on the forty shares of stock which the plaintiff claims defendant purchased for him. We ask the court to tell the jury that there can be no recovery in this action for any dividends or rights."

If we were to treat the exception to the refusal to comply with these requests as sufficiently specific to require consideration, we should find no error therein. The method of book-keeping alone, would not be conclusive of the plaintiff's rights. It would doubtless be evidence, but it would not necessarily bar a recovery. Its force as evidence would depend much on whether plaintiff knew how the books were being kept, and whether he then knew of the defendant's true relation to the business, and many other considerations.

So far as the second request is concerned, we need only say that it involves a consideration of the evidence which is not before us for this purpose.

Subject to the defendant's exception, the two special verdicts rendered in the circuit court were admitted in evidence. They are as follows.:

"Do you find from the evidence that Charles N. Brady was the agent of the defendant in the stock transactions in issue?

A. Yes.

2. Did the plaintiff in dealing with him in relation to said transactions rely upon such agency?

A. Yes."

The evidence fairly tended to show that there was no change in the Newport business during the time covered by the plaintiff's eight deals, and that the defendant's relation to it was the same during all this time,—which began with No. 288 April 6, 1905, and ended with No. 280, Nov. 4, 1905. If, then, Brady was the defendant's agent during any part of this period that fact rendered it more probable that he was such agent during the rest of that period. In other words, if Brady was the defendant's agent in the six trades recovered for in the former suit, that fact tended to show that he was its agent in the two trades here sued upon. The first special verdict determined the fact of agency during the time covered by the six trades, and determined it for all time so far as controversies directly or indirectly involving it between these parties is concerned. Therefore, this special verdict was properly admitted.

This is well shown by *Currier* v. *Richardson*, 63 Vt. 617. There the question was, had the plaintiff stolen certain property of the defendant. To meet the claim of the defendant who took the affirmative of this proposition, the plaintiff was allowed to show that after the time when the defendant claimed to have learned all the facts, he visited her, made her presents, and promised to marry her. These facts, it was said, would, if proved, render the defendant's claim less probable, and it was held that they might be established by the record of a judgment against the defendant recovered by the plaintiff in an action for a breach of that promise to marry.

The other special verdict stands different. The fact that the plaintiff relied upon the agency in the six deals, has no legal tendency to show that he so relied in the former deals. But the objection below makes it unnecessary for us to inquire whether this error was harmful, for it was predicated solely upon the lack of identity of issues in the two suits. But, as we have seen, identity of issues was not necessary; so the court was justified in overruling the objection, and no new ground of objection will be here considered. *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233; *State* v. *Noakes*, 70 Vt. 247.

Various exceptions were saved to evidence admitted tending to show that the literature, arrangements, furnishings and methods of doing business at the Newport office were similar

to those at St. Johnsbury and Woodsville,—but it was all properly received. It was conceded that the latter offices were branches of the defendant, managed by it through a local agent. The evidence tended to show that the Newport office was the defendant's or at least that the plaintiff was reasonably justified in understanding that it was, and in dealing with it as such.

The plaintiff was properly allowed to testify that at the time he made these two trades he knew that the defendant paid the rent on the wire running into the Newport office (which payment the defendant admitted) and that he knew the offices at St. Johnsbury and Woodsville were real agencies of the defendant. The facts all being admitted, proof that knowledge of them was brought home to the plaintiff, no matter how, rendered more reasonable · his conclusion that the Newport business belonged to the defendant and more probable his statement that he dealt with Brady as an agent. The testimony was not hearsay, though it might have been based upon hearsay, for it was the statement of a fact within his own knowledge—that the admitted facts were made known to him.

The plaintiff was also properly allowed to testify that in the two transactions he relied upon the defendant, and upon the dividends posted on the board at Newport, and on the truth of the statement printed at the head of certain blanks used in the Newport office to the effect that it was a branch of defendant's business. Though the defendant's evidence tended to show otherwise, there was other evidence in the case tending to show that the Newport office was, in fact, a branch office of the defendant. This being so, it was permissible to show any relevant statement emanating from that office in the nature of an admission of a material fact. The figures posted and the printed blanks belong to that class. It was competent for the plaintiff to testify directly to the fact that he relied upon such admissions and the conditions evidenced by them. It is like the proof of motive, belief and intent, to which one may directly testify. *Crawford* v. *Joslyn,* 83 Vt. 361.

The plaintiff was shown a small book issued by the defendant and bearing its name, which came from the St. Johnsbury office but was like those in use at the Newport office; and from this book testified how low New York Central Rail-

road stock went in 1905. This evidence was admitted to show that the plaintiff was at all times sufficiently "margined". No claim was made that the witness incorrectly read the figures contained in the book, and none was made that they were erroneous. Whatever the book showed regarding the matter was in the nature of an admission and admissible, if relevant; and in view of the attitude of the defendant, we cannot say that the evidence was irrelevant. The witness was also allowed to show that the "H" and "L" at the head of the columns stood for "high" and "low", respectively, and that "Div." meant "dividend", which was stated to be 5%. In this there was no error. *State* v. *White*, 70 Vt. 225.

The defendant introduced evidence tending to show that the methods of conducting the business at St. Johnsbury differed from those in force at Newport; and as an instance gave evidence to show that the St. Johsnbury manager was required to make full remittances each night,—which rule did not obtain at Newport. To meet this, the plaintiff was allowed in cross-examination of the St. Johnsbury manager, to show that customers sometimes left money with him which was not so remitted. In this there was no error. It tended to discredit the claim of the defendant, just stated; and in any view its admission could not be considered harmful, for the witness said it was against his orders and of very infrequent occurrence.

There was no error in admitting the general verdict and the specification in the first case, nor in admitting the opinion of the circuit court of appeals. The only purpose of admitting the specification was to show the dates of the trades recovered for in that suit. The record of the judgment did not show the exact points litigated; so extrinsic evidence was admissible to show just what was concluded by that judgment. But there was another and a conclusive reason why the defendant cannot be heard to complain: All the facts relative to the former trial, judgment and *remittitur* were set forth in the defendant's special plea. Just what that judgment was based upon, and just what was remitted is therein recited. That the two items here in suit were the very ones involved in the amount remitted from that judgment appears from the plea and by a special concession made during the trial. Indeed,

the very point of the defence to this case was that these very items were concluded by the judgment or the *remittitur*. The plea amounted not only to an admission of these facts, but it was a judicial admission of them. "The pleadings in a cause," says Prof. Wigmore, "are for the purposes of use in that suit, not mere admissions but judicial admissions; they are not means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues." 2 Wig. L. §1064. See also *U. S. v. Fidelity Co.*, 83 Vt. 278. So even if the method of proof was objectionable, the defendant cannot complain that the plaintiff was allowed to show what he had solemnly admitted on the record. It was proper to show the ground on which the circuit court of appeals denied a recovery under the general count, and this could only be done by the opinion filed.

It was not proper to read the record of the former case to the jury. The contents of the record was for the court, and the jury should have been instructed as to what was shown by the record and how the case in hand was affected by it. *Currier v. Richardson, supra.* But though the defendant objected, it did not indicate that his objection was made because the record was being read to the jury, rather than shown to the court, nor did it claim that more was being read than was necessary to establish the fact embraced in the offer. So this ground of objection is not now available; for the rule is, subject to certain exceptions which do not here apply, that the objection must indicate the very point on which the court is asked to rule. *Doyle v. Melendy*, 83 Vt. 339; *Herrick v. Holland*, 83 Vt. 502. Or, to state the rule in the language of *Ala. City etc. v. Ventress*, (Ala.) 54 So. 652, "the court will not be put in error in ruling on a general objection, unless the answer called for is plainly illegal and irrelevant."

*Judgment affirmed and cause remanded for further proceedings against the trustees.*