The respondent, at the June Term, 1932, of the Orange county court, was tried and found not guilty upon an information which charged him (1) with obtaining money and goods by false pretenses and a series of false tokens, namely, worthless checks, (2) with conspiracy with Kenneth Bissell, Harold Davis, and Marion Davis to defraud by means of such worthless checks, and (3) with being an accessory after the fact in aiding Marion Davis to escape after she had passed a series of such worthless checks.
At the November Term, 1932, of the same court, the respondent was tried for perjury alleged to have been committed by him while testifying as a witness in his own behalf at the June trial, and for alleged subornation of perjury in soliciting and counselling Kenneth Bissell (brother of respondent) to commit perjury at the same trial. The respondent has been found guilty on both counts, and sentenced. His exceptions bring the case to this Court for review.
A brief statement of the tendency of some of the evidence of occurrences on which the charges against the respondent are based will help to a better understanding of the points raised.
Kenneth Bissell and Ethel Bissell, his wife, left Vermont on January 7, 1932, and went to Port Henry, N.Y. On January 10, 1932, the respondent and Harold Davis, pursuant to a previous arrangement between them, visited Kenneth at Port Henry. *Page 86 
At that time Kenneth, at the request and in the presence of the respondent, made, signed, and delivered to Harold about ten checks aggregating $220 and drawn on a bank in Bethel, Vermont, in which Kenneth had no funds. The respondent and Harold returned to Vermont the same day, and, the following Thursday, these checks were delivered by Harold to Marion Davis, his wife. Harold then returned to Port Henry in Kenneth's automobile. The following Saturday and Sunday Marion passed the checks to various tradesmen in Randolph, Vermont, receiving therefor goods and cash. On her way to Randolph Marion rode with the respondent from Warren to Roxbury and he advised her when and where to pass the checks and what she should purchase. Sunday morning, January 17, respondent came to Randolph in his automobile and from there drove with Marion to Port Henry. During the trip the respondent received from Marion the money realized from the checks. He kept twenty dollars and told Marion to retain twenty-five dollars for her own use. The balance of the money was returned to Marion, and was later the same day divided between Kenneth, Harold, and others at Port Henry in the presence of the respondent.
At the first trial, the respondent denied having any knowledge of the checks until after the events above described; that he had not received any money from Marion, and none was divided in his presence; that he had had no talk with Kenneth or Ethel Bissell about the case.
That testimony is the basis for the charge of perjury now made against him in the first count of the information.
After Kenneth had testified at the first trial to the effect that the respondent was directly implicated in the bogus check transactions, he was recalled by the State on the next following day and he then testified that his testimony of the day before was false; that the evidence implicating the respondent in the passing of the checks was a frame-up arranged at Valois, New York, between him and the Davises, in order to lessen their punishment if they were caught; that the checks were in fact made out in Vermont.
The evidence at the trial of the present case was to the effect that, after the recess of the court for the day of June 22 (the day Kenneth first testified), respondent called Kenneth to his car and took him down the road about one mile toward *Page 87 
Tunbridge and there solicited him to change his story and made promises of assistance in a case then pending for sentence against Kenneth if he would do so. The intended change of testimony was immediately communicated to the State's attorney and sheriff by Kenneth and the respondent. The respondent and Kenneth, later that evening, attempted to employ an attorney to represent Kenneth, and the next morning, before the court convened, respondent signed a note for $600, payable to Lena Bissell, his mother, to pay all the outstanding spurious checks, and also to pay a note outstanding against Kenneth.
This testimony is the basis of the charge of subornation of perjury made against the respondent in the second count of the information.
The first exception is to the sustaining of the State's demurrer to the respondent's plea of res judicata. The plea sets forth, in extenso, the former information; it alleges the trial thereon resulting in a verdict and judgment of acquittal, and concludes that the jury in the former case found and determined the testimony of respondent and Kenneth, now alleged to be false, to be true; that the judgment of not guilty of the charges alleged in the former information adjudicated that the respondent was not guilty of perjury or subornation of perjury as charged in the present information. The demurrer states that the matters set forth in the plea are insufficient in law to entitle the respondent to the judgment prayed for, and denies the adjudication as alleged.
This demurrer merely raises the question of the legal sufficiency of the plea; it has none of the characteristics of a "speaking" demurrer and what is said in State v. Caplan, 100 Vt. 140, 156, 135 A. 705, is not in point. The demurrer admits the facts which are well pleaded (New York Central R.R. Co. v. Clark,92 Vt. 375, 379, 104 A. 343), but it does not admit the correctness of the conclusions of law made in the plea. Page v.McClure, 79 Vt. 83, 89, 64 A. 451, 16 C.J. 424.
The main question presented by this exception, as we understand the record, is whether the respondent's acquittal is a bar to a prosecution for perjury and subornation of perjury committed at the trial, since the jury at the former trial had submitted to it the question of the credibility of the respondent and Kenneth as witnesses, and in reaching their verdict must have determined the truthfulness of that part of their testimony, *Page 88 
which is alleged in the present information to be false. This question has its counterpart in many of the other exceptions, and what we say now will dispose of them all.
The plea is insufficient to meet the test of former jeopardy. There is no identity of offenses. Such a plea must be for the same crime, and it must appear that the offenses charged in both cases are the same in law and fact. State v. Pianfetti, 79 Vt. 236, 241, 65 A. 84, 9 Ann. Cas. 127; State v. Jangraw, 61 Vt. 39, 40, 17 A. 733; Commonwealth v. Roby, 12 Pick. (Mass.) 496, 503; State v. O'Brien, 106 Vt. 97, 170 A. 98. In the former case the issue was the guilt or innocence of the respondent of the particular crime charged, and the issue under the present information is the truthfulness of the testimony at the first trial.
The respondent, however, contends, on the authority ofSpaulding v. Mut. Life Ins. Co. of New York, 94 Vt. 445, 448, 111 A. 522, that even though the issues are different, the truthfulness of the testimony, now charged to be false, was necessarily determined by the jury, and so the judgment of acquittal is conclusive of that question.
It is unnecessary to discuss whether what is said in the Spaulding Case has any reference to such a collateral question as is now before us; it is enough to say that the doctrine of resjudicata there stated does not apply to perjury cases. State v.Sorgood, 80 Vt. 415, 68 A. 49, 130 A.S.R. 995, 13 Ann. Cas. 367. This case clearly recognizes the public interests which demand the limitation of the doctrine. See, also, State v.Vandemark, 77 Conn. 201, 58 A. 715, 1 Ann. Cas. 161. The estoppel by judgment serves a wise and useful public policy by putting an end to litigation, but it is not to be extended to shield crime, or to grant immunity to criminals. Jay v. State,15 Ala. App. 255, 73 So. 137, 139. In this well-reasoned case it was said: "It would be a monstrous doctrine to hold that a person could go into a court of justice and by perjured testimony secure an acquittal, and because acquitted he could not be tried for his perjury; this would be putting a premium upon perjury and allowing a scoundrel to take advantage of his own wrong."
The courts are now almost unanimous in holding that an acquittal of one charged with crime is no bar to any perjury committed at the former trial. Note, 37 A.L.R. 1290. And it has been held that the same rule applies although a conviction *Page 89 
would necessarily import a contradiction of the verdict in the former case. People v. Niles, 300 Ill. 458, 133 N.E. 252, 37 A.L.R. 1284.
The respondent argues certain claimed defects in the information filed in the former prosecution, on the theory that the demurrer opens the whole record and attaches to the first substantial defect in the pleadings. Spaulding v. Mut. Life Ins.Co. of New York, 94 Vt. 445, 447, 111 A. 522. The rule, however, carries the demurrer only through the course of the pleadings in the particular case before the court. 49 C.J. 447, § 551. Moreover, the respondent has pleaded to that information and he cannot demur to a pleading to which he has previously taken issue. Coates v. Eastern States Farmers' Exchange, 99 Vt. 170, 179, 130 A. 709.
The respondent likewise questions the sufficiency of the present information. The claimed insufficiency of the first count is that it fails to show that the respondent "wilfully and corruptly swore falsely" or that he "knowingly swore falsely." After setting forth formal requirements as to parties, the court, the oath, etc., the count alleges that the respondent "then and there committed the crime of perjury and did then and there testify falsely in answer to interrogatories, etc." The claimed false testimony is then set forth and its materiality is alleged. This count follows the statutory form and was held sufficient inState v. Camley, 67 Vt. 322, 31 A. 840. It is there said, at page 325, "The word `perjury' has, by the common law, a well-defined legal meaning, and the respondent is charged with knowledge of its meaning, and when he is informed that he is charged with the commission of the crime of perjury by giving certain testimony, he is sufficiently informed that it is claimed that he was lawfully sworn, that his testimony was false, and that he wilfully and corruptly testified falsely."
The case of State v. Smith, 63 Vt. 201, 22 A. 604, which is relied upon by respondent, was decided before the passage of No. 29 of the Acts of 1890, "An Act to simplify indictments for perjury."
The count charging the respondent with subornation of perjury is attacked on the ground that it is not alleged that the respondent knew that the witness knew that he was to testify falsely. *Page 90 
It is true that the charge must show, not merely that the suborner caused a false oath to be taken, but must go further, and show that he knew, at the time, that the false oath was taken wilfully, corruptly, and knowingly by the person named, or, in other words, that he knew he was causing the crime of perjury to be committed. State v. Trook, 172 Ind. 558, 88 N.E. 931; 2 Bishop, Crim. Law, § 1197 (2).
This count, after sufficiently charging perjury committed by Kenneth, alleges that the respondent was concerned in the commission of it; that before the perjury was committed the respondent did feloniously and maliciously aid and abet Kenneth in the commission of the same; that he did corruptly, wickedly, maliciously, and feloniously command, induce, procure, solicit, counsel, suborn, instigate, and persuade Kenneth to commit wilful and corrupt perjury; that he well knew and intended that Kenneth should knowingly, wilfully, and corruptly swear falsely and knew that the matters, which Kenneth swore to as true, were false.
We think that all needful knowledge and corruption are sufficiently alleged. See State v. Richardson, 248 Mo. 563, 154 S.W. 735, 44 L.R.A. (N.S.) 307; Com. v. Devine, 155 Mass. 224, 29 N.E. 515.
The respondent excepted to the overruling of his motion for a directed verdict on the ground that there was no sufficient corroborating evidence to support the charge of perjury or of subornation of perjury. It is admitted that these charges were supported by the testimony of Kenneth Bissell, Marion Davis, and Harold Davis; also in part by the testimony of Ethel Bissell. But the claim is made that these witnesses were not credible, as matter of law, because they were admittedly accomplices in passing the checks. Even assuming, as the respondent contends, that they were such accomplices, the credibility of their testimony was for the jury, to be considered in view of that fact under proper instructions. State v. Montifiore, 95 Vt. 508, 512, 116 A. 77; Taft v. Taft, 80 Vt. 256, 259, 67 A. 703, 130 A.S.R. 984, 12 Ann. Cas. 959; State v. Dana, 59 Vt. 614, 618, 619, 10 A. 727; State v. Potter, 42 Vt. 495, 505, 506. The jury were carefully and accurately instructed that the testimony of the witnesses who had admittedly sworn falsely or had been convicted of a crime involving moral turpitude should be received with great caution, and should not be considered *Page 91 
unless they found in it such inherent evidence of truthfulness that they were forced to believe it. These instructions were a sufficient compliance with our rule of practice. State v. Dana,supra. There was further corroboration by evidence of oral admissions of the respondent.
At the close of the evidence the State asked permission of the court to withdraw from the consideration of the jury certain of the questions and answers in both counts of the information therein alleged to be false. The respondent moved that a verdict of not guilty be directed as to every question and answer included in the State's motion to withdraw. The State's motion was granted, and the respondent's motion was denied. The respondent excepted. The court in its charge specifically referred to each question and answer withdrawn, and carefully and plainly instructed the jury that they were not for their consideration because of lack of evidence to establish either their materiality or their falsity. Further, before permitting the jury to have the information during their deliberations, the court, with the consent of the respondent, struck out with blue pencil the matters withdrawn, and again told the jury that those questions and answers were not to be considered.
It would certainly be an anomaly in legal procedure to have a directed verdict and an issue submitted to the jury concerning matters alleged in the same count. The procedure adopted by the trial court is the only one consistent with orderly practice. In fact, it has had the approval of this Court in civil cases when the issues withdrawn and the issues submitted are in separate counts. Yandow v. New Amsterdam Casualty Co., 101 Vt. 322, 324,143 A. 299. But the respondent says that the procedure adopted leaves him without redress if the State should decide to again prosecute him on the matters charged out of the case. It has long been the law of this State that the State's attorney may, after the trial commences, enter a nolle prosequi by permission of the court on one or more counts of the information. State v. Roe,12 Vt. 93, 109. And that a nolle prosequi entered at any stage of a trial before verdict by order of the court is not a bar to another indictment for the same offense. State v. Champeau,52 Vt. 313, 317, 36 A.R. 754. The question whether the action of the court in the present case constitutes a bar to another prosecution on the matters withdrawn *Page 92 
and charged out may well await the necessity for such a discussion. The denial of respondent's motion was without error.
Evidence was received, subject to the objection and exception of respondent that it was incompetent, irrelevant, and immaterial, tending to show that Kenneth passed several worthless checks at St. Johnsbury and Burke at the instigation of the respondent. This evidence was offered and received in support of the charges which were later withdrawn and charged out of the case. The point now made is that the evidence was not charged out but was left in the case after the charges were withdrawn.
The evidence was material and admissible on allegations before the court when the testimony was received, and the court cannot be put in error for the admission of legal testimony although the allegations as to which it was admissible were subsequently withdrawn. Berkley v. Burlington Cadillac Co., 97 Vt. 260, 268,122 A. 665.
Referring to a telephone call Kenneth had attempted to make to his brother after Kenneth's arrest in a case tried against him at the preceding June Term, Kenneth was asked on cross-examination: "Did you try to reverse the charges and did he refuse to accept the call?" The question was excluded and respondent excepted. It is claimed that an affirmative answer, which was expected, would tend to show that Kenneth harbored ill-will against respondent. Assuming that it had such a tendency, there was no error in the exclusion. The rule is that ill-will or unfriendly feelings of a witness may be shown by a general inquiry whether the witness is friendly, or otherwise, but the question is so collateral to the issue that details will not be permitted to be shown. State v.Glynn, 51 Vt. 577, 580.
Ethel Bissell was asked on direct examination whether there was any "frame-up" at Valois, New York, implicating the respondent. The question was allowed subject to exception that it called for witness' conclusion. The expression was used repeatedly at the trial as referring to an understanding between Kenneth and the Davises, as testified to at the first trial by Kenneth and the witness. That its meaning and reference was understood by everyone connected with the case is made apparent by the record. Besides, the word now has a familiar and *Page 93 
generally recognized meaning. It is defined in Webster's Collegiate Dictionary (4th ed.), as "a conspiracy or plot, especially for an evil purpose, as to incriminate a person on false evidence." The question called for a statement of fact, and not a conclusion.
The State was allowed to show, over objection and exception of respondent that it was immaterial, irrelevant, and incompetent, that Kenneth, his wife, and the Davises went from Port Henry to Valois, New York. It was proper for the State to show this, since the alleged false testimony of Kenneth at the first trial was to the effect that the frame-up was arranged there. In any event, no possible harm to the respondent is indicated.
After Kenneth had testified that his testimony at the former trial on June 22 was true, and after the transcript of that part of his testimony (State's Exhibit 4) had been received in evidence, and after he had testified that his testimony at the same trial on June 23 was not true, the State offered the transcript (State's Exhibit 5) of the testimony given by Kenneth on June 23 for the purpose of showing that he testified falsely on that occasion. This was received subject to respondent's exception that it had no tendency to show that fact. The State made no claim below, nor is any made here, that this testimony standing alone was proof of its falsity, but rather that it was a link in the chain of proof tending to show that Kenneth testified falsely at the former trial. Kenneth, having testified to the falsity of his testimony, it was proper for the State to show by the record what the testimony was in the cause in which it was claimed he testified falsely. State v. Camley, 67 Vt. 322, 326, 31 A. 840. It was not only proper but necessary to the State's case under the second count of the information that this testimony be shown. Underhill's Criminal Evidence (3rd ed.) § 684.
State's Exhibit 7, a transcript of the testimony of Ethel Bissell given at the former trial, was offered and received solely for the purpose of showing that the alleged false testimony was given on a material issue. The grounds of respondent's objection and exception were that the evidence was incompetent, irrelevant, and immaterial.
It is a general rule that the materiality of alleged false testimony may be shown by the record of other testimony given in the cause. 48 C.J. 894, § 156; State v. Campbell, 93 Conn. 3, *Page 94 104 A. 653. It is apparent that this evidence or some of it, was material and relevant to the issue of the materiality of some of the alleged false testimony. That is sufficient to sustain the ruling under a general objection. Holbrook v. J.J. Quinlan Co.,84 Vt. 411, 80 A. 339; Jenness v. Simpson, 84 Vt. 127, 140, 78 A. 886.
The point now made is that, since the witness admitted at the present trial that much of her former testimony was false, it was the duty of the court to reject it as being without merit. Under our rule, that question was for the jury, and not for the court. The court carefully instructed the jury regarding the use to be made of this evidence, and the effect of any false statements therein on the credibility of the witness. The exception is not sustained.
There was no error in permitting Marion Davis to testify that she cashed one of the checks at Bells Clothing Store in Randolph, and what she received therefor. No claim was made that the respondent knew of the particular transaction, but the evidence was offered and received only for the purpose of showing that Mrs. Davis had the money which the State claims was divided later between the respondent and others. The respondent's denial of the receipt of any of the money, or that any of it was divided in his presence, is a part of the perjury assigned.
Exception was saved to the exclusion of a question asked respondent on direct examination as to what the charge was against Kenneth when he was bailed by respondent at Woodstock, and to the exclusion of an offer to show his knowledge of the fact. The exclusion was proper; the record was the best evidence. If, as the respondent now says, his purpose was to show respondent's understanding of the charge as bearing upon the probability of his claimed future conduct, he should have made his position clear to the trial court by a proper offer.
The court charged the jury: "Now in order to support a conviction for perjury or for subornation of perjury, it is necessary that there should be at least the testimony of one credible witness to prove the falsity of the testimony and that must be in a perjury case supported by some corroborating circumstances."
The respondent excepted to this charge as follows: "We except to the charge of the court that subornation of perjury *Page 95 
and perjury may be proved by the testimony of one credible witness supported by some corroborating circumstance, because in this case there was no corroborating circumstance from which the jury could find, in addition to the testimony of one credible witness, that perjury had been committed."
The respondent now argues that the charge, in effect, authorized conviction of the respondent for subornation of perjury if the falsity of Kenneth's testimony was established by the uncorroborated testimony of a single witness. This point was not made below, so it is not before us. The exception taken is not briefed and is therefore waived. However, the quoted charge itself is a sufficient answer to any such contention. This is recognized and admitted by the language of the exception.
Judge Fred O. Ralph, one of the assistant judges of the Orange county court in which the cause was tried, was sworn as a witness with other State witnesses. He thereafter acted as a member of the court throughout the trial. He was not called to the witness stand and did not testify. Nothing occurred except that he was sworn as a witness. After verdict and before judgment, the respondent moved for a mistrial on the ground that his rights were prejudiced and that he had been deprived of a fair and impartial trial. The motion was overruled and respondent excepted.
The respondent was entitled by law to a fair trial and one as free as may be from suspicion of partiality or undue influence.Cady, Admr. v. Lang, 95 Vt. 290, 294, 115 A. 140. The law is clear and emphatic that if Judge Ralph had testified in the case it would have been his duty to leave the bench and to take no further judicial part in the trial. People v. Dohring, 59 N.Y. 374, 17 A.R. 349; Rogers v. State, 60 Ark. 76, 29 S.W. 894, 31 L.R.A. 465; and notes 46 A.S.R. 154. The reason for the rule is that a person cannot be both a witness and a judge in the same cause. The unseemly and embarrassing results which necessarily follow such an occurrence are fully set forth in People v.Dohring, supra. In that case the court says that the practice, if sanctioned, may lead "to the hindering of justice, and to the scandal of the courts." See, also, Powers v. Cook, 48 Okla. 43,149 P. 1121, L.R.A. 1915F, 766. But here the judge did not testify, so the rule does not apply. Without any doubt, if Judge Ralph had given testimony he would have observed the proprieties, retired from the bench, and thereafter *Page 96 
declined to take any further part in the trial as a member of the court.
No case is cited, and we do not think any can be found, which holds that merely administering the witness' oath to a judge presiding at the trial is a disqualification. The orderly administration of justice does not require us to go that far, unless something more is shown. Prejudice is not presumed; it must be shown, and the respondent has not sustained that burden.
Another ground of respondent's motion for a mistrial is that the sheriff, who had charge of the jury for a short time during the trial, was later sworn and testified as a witness for the State. This is all that occurred upon which prejudice is claimed.
While it would be better that an officer, who is not a witness, should have charge of the jury, yet this fact alone does not render him an incompetent witness. Pope v. State, 168 Ala. 33, 53 So. 292; State v. Bullock, 136 La. 167, 66 So. 767; 40 Cyc. 2237 (h), nor deprive the respondent of a fair and impartial trial.State v. Flint, 60 Vt. 304, 320, 14 A. 178; Note, Ann. Cas. 1912C, 882.
The sheriff, whose chief official duties are concerned with law enforcement within the county, is frequently, in criminal cases at least, a necessary witness, and the rule contended for by the respondent would, in such cases, deprive the State of the benefit of his testimony. This would impede rather than promote justice, by allowing many criminals to escape just punishment. The law is guilty of no such absurdity. The motion was properly denied.
We have considered all of respondent's exceptions which have been properly taken and presented, and we find no error. We have read the long transcript of the testimony, and we are satisfied that the trial court guarded the respondent's rights with unusual care. The evidence establishes respondent's guilt so clearly that the jury, acting reasonably, would not have been justified in coming to any other conclusion.
Exceptions overruled. Let execution be done. *Page 97