Argued January 11; affirmed March 26; rehearing denied
May 21, 1940

# STATE *v.* REYNOLDS
(100 P. (2d) 593)

In Banc.

*Frank B. Reid* and *C. N. Johnston,* both of Eugene, for appellant.

*L. L. Ray,* of Eugene, District Attorney, and *Ralph E. Moody,* of Salem, for the State.

ROSSMAN, J. This is an appeal by the defendant from a judgment of the circuit court, based upon the verdict of a jury, which finds him guilty of the crime of perjury. The indictment charges that the purported false testimony was given by the defendant March 31, 1938, while he was testifying as a witness in his own behalf in a criminal action in which he and three other indictees (V. Bailey, R. W. Blaine and V. D. McCauley) were accused of the crime of having broken the glass of a building which they did not own. The indictment in that case was based upon § 14-364, Oregon Code 1930, and the facts are related in *State v. Reynolds,* 160 Or. 445, 86 P. (2d) 413. The present indictment states that while the defendant was testifying (in his separate trial) he falsely swore (1) that on November 15, 1937, he neither saw nor conferred with Ernest E. Carson, John E. Newland and Cecil Moore; and (2) that none of those men visited his office November 15, 1937.

A statement of the issues presented to us will be facilitated, we believe, if we first mention the following testimony. In November of 1937, the defendant, a labor union official, lived in Eugene where the City Barber Shop (nonunion) was being picketed. The pick-

eting had failed to produce the desired results. Newland, Carson and Moore resided in Portland and their services were available to those who desired crimes of violence committed. Late in the evening of November 15, 1937, those three men broke the windows of the City Barber Shop. They testified in the window-breaking case that on November 15, 1937, they drove to Eugene, went to the defendant's office, introduced themselves to him as the men who were available for breaking windows, conferred with him concerning the windows of the City Barber Shop and were paid $60 in cash in consideration of their agreement to break the City Barber Shop windows. Later that day they broke the windows. The defendant denied in the window-breaking case that on November 15, 1937, the three lawbreakers visited his office and conferred with him. In the present case the state contends that when he testified as just indicated he committed perjury. The jury in the first case found the defendant guilty, but the resulting judgment of conviction was reversed in the decision above cited because the only testimony in proof of the defendant's guilt was given by his accomplices. After the reversal the present indictment was returned.

The appellant presents ten assignments of error. The first submits that error was committed when an objection made by the defendant to a part of the district attorney's opening statement to the jury was overruled. The ninth challenges an order which denied the defendant's motion for a directed verdict made at the close of the state's evidence and before the defendant had offered any. The other eight are concerned with rulings made while the state's evidence was being received.

The first assignment of error is predicated upon a charge that reversible error was committed when the trial judge overruled the defendant's objection to the following part of the district attorney's opening statement: "The testimony will further show that these men went out and broke the windows in the City Barber Shop and after they had broken them went on a trip to California and on their return, in order to complete doing a good job which they had agreed to do * * *" At this point the defendant objected "to any remarks of what they did after they had testified as to what exactly took place up there. This is a charge of perjury. It depends entirely upon whether this defendant was up at that place and had conversation with them. Anything these men did afterwards in pursuance of a conspiracy, the state cannot bring that evidence in front of the jury." At that point the trial judge declared: "I will say to the jury that these opening statements are not evidence in the case. They are merely for the purpose of better acquainting you with the issues so that you may understand the evidence that is given upon the witness stand. * * * It is necessary to show what the issue was, and what the state of the case was when this alleged testimony was given, and I will not pass upon the admissibility of that matter at this time * * *." The district attorney then proceeded: "The evidence will show that on the return from California that they broke the windows; that they testified that they broke the windows again." Nothing more was said about the California trip or a second breaking of the windows. No motion was made that the jury be instructed to disregard the challenged statement.

■■ In arguing in support of this assignment of error, the defendant does not contend that the district attorney, through the use of the challenged remark, sought to convert the privilege of making an opening statement into a medium for placing before the jury inadmissible evidence; nor does he in any other way impugn that official's purposes. The state was required to prove not only that the defendant's challenged testimony in the first case was false, but also that that testimony was material to some issue in that case. If it was irrelevant to the issues in that case whether or not the defendant saw and conferred with Newland, Carson and Moore on November 15, 1937, his testimony, even though false, could not have justified his conviction upon a charge of perjury. In the window-breaking case it was essential that the state prove, not only that the defendant hired someone to break the windows, but also that the latter were broken as a result of the hiring. The fact that the windows were stoned as a result of the conference of November 15, 1937—if such was the fact—indicated that the alleged meeting in the defendant's office was not an irrelevant fact. If the state had merely proved in this case that on November 15 the three mercenaries visited the defendant's office, conferred with him and agreed for a consideration of $60 to break the barber shop windows—but had proved nothing more—materiality would have been lacking and the defendant would have been entitled to an acquittal. But when it developed that the windows were broken as a result of that conference and agreement—assuming that the state's witnesses told the truth—the defendant's denial that he met with the three lawbreakers was shown to have concerned a material issue. In so expressing ourselves

we do not indicate a belief that it was essential that the state prove in this case that the windows were broken twice. We have employed the term "material issue" in its broader meaning. The precise issue could scarcely be determined upon the opening statements. In fact, the state offered no evidence concerning the purported second breaking; but see *State v. Reynolds*, 160 Or. 445, at 451, 86 P. (2d) 413, at 415.

The purpose served by an opening statement is to acquaint the jurors with the issues, the contemplated testimony and the relationship of the latter to the issues. The making of one is subject to the discretion of the trial judge. In exercising this discretion the trial judge must of necessity rely to a large extent upon the good faith of the attorney. As we have indicated, the challenged remark was within the scope of the issues to be determined by the jury. We find nothing in the attacked ruling which permitted the district attorney to depart from the issues, nor anything which indicates a violation of the discretion vested in the presiding judge. It is our belief that this assignment of error possesses no merit.

The second assignment of error is based upon a contention that error was committed when the court received as evidence, upon the state's offer, the judgment roll in the window-breaking case. Section 13-1119, Oregon Code 1930, provides that the following constitute the judgment roll:

"1. The indictment and demurrer, if there be one;
"2. A copy of the journal entry of the plea, the trial and verdict, and of any order involving the merits and necessarily affecting the judgment;
"3. A copy of the journal entry of the judgment;
"4. The bill of exceptions, if there be one."

The judgment roll consisted of the indictment, a demurrer filed by one of the four indictees (Blaine), the order entered upon the arraignment of the four, and all motions, orders, etc., which followed the indictment and terminated with the judgment of guilt of this defendant. The only documents concerning the other three indictees were the ones just mentioned together with orders which dismissed the charges against two of them. The bill of exceptions and the transcript of evidence were not parts of the judgment roll. The latter included two verdicts finding this defendant not guilty upon two counts of the indictment with which we are not concerned, and the one which found him guilty of the third count—the crime of breaking the barber shop windows. These verdicts were followed in the judgment roll by a motion of this defendant for a new trial accompanied by several supporting affidavits, all of which attacked the testimony of one of the state's witnesses, Floyd Hall. As we shall later indicate in greater detail, Hall testified in the window-breaking case that on November 15, 1937, at 5:30 p. m., he spoke to the defendant on the telephone, and a few minutes later conferred with him in his office. These affidavits indicated that neither the telephone conversation nor the conference occurred on November 15. They are followed in the judgment roll by eight filed by the state, the chief purport of which is that, although the conference of Hall and the defendant in the latter's office did not occur until November 16, the telephone conversation occurred November 15, as Hall had testified. The next paper in the judgment roll is an order which overruled the motion for a new trial, and the last, entitled "Sentence", ordered the defendant's incarceration for one year.

When the judgment roll was offered as evidence by the district attorney he described his purpose as follows: "We are offering the judgment roll for the purpose of proving the fact that there was such a case, the indictment, the fact that the jury was sworn in, and all the rest of the things which formerly proved the record in that case." The instructions to the jury, referring to the judgment roll and the bill of exceptions, said: "Now there has been offered and received in evidence here the bill of exceptions in this other trial which is referred to in the indictment and that bill of exceptions, and I should say not only the bill of exceptions but the judgment roll which includes the indictment and the orders and so forth which are filed in that other case, were received in evidence in this case and those were received in evidence for the purpose of establishing the allegation in the indictment that this alleged false testimony was given in that case, and to establish the fact, if it is a fact, that there was such a case and that it was had in this court and that the issue was as alleged in the indictment in this case, that is to say, that the defendant Reynolds was on trial in that case, on a charge of breaking glass in a building not his own. And that was the purpose for which that evidence was offered and received and it is to be considered by you for the purpose of establishing those allegations, if it does establish them, and for that purpose only."

From *State v. Kalyton,* 29 Or. 375, 45 P. 756, we quote:

"But before the materiality can be established, it is essential to know what the cause is, and the nature of the issue or controversy. 'The cause and issue wherein was committed the perjury are proved by the record,' says Bishop, 'which should be in the form and

with the verification required by the ordinary practice of the court.' 1 Bishop on Criminal Procedure, § 933b. * * * At all events, it is essential to produce the record, if any was made, of the judicial proceeding or cause wherein the false testimony is alleged to have been given: * * *''

In *State v. Stilwell*, 109 Or. 643, 221 P. 174, the defendant, who had been convicted of the crime of perjury, claimed that error was committed through the receipt as evidence of the judgment roll in the action (civil) in which it was charged that the perjured testimony had been given. In rejecting this contention, the decision said:

''The general rule is that in a prosecution for perjury, it is essential to correctly describe and accurately prove the judicial proceedings in which the perjury is alleged to have been committed. It must be accurately described in the indictment and must be proved substantially as laid. * * *

''Upon the trial of the present case it was incumbent upon the state to legally prove the record of the judicial proceedings in which the perjury is alleged to have been committed.

''There was introduced upon the trial of the present case a duly certified copy of all the original orders entered of record in the proceedings in which the perjury was alleged to have been committed. * * * While the judgment-roll is not the exclusive record of the proceedings of the case but only a collection of papers and entries selected from the record for convenience and economy, it is sufficient in the opinion of the legislature to show the judgment of the court and its jurisdiction to give it. * * * The judgment-rolls in the present case were properly admitted in evidence.''

See to like effect annotation 87 A. L. R. 1267, and 48 C. J., Perjury, page 892, § 153.

■ We believe it is evident that the judgment roll in the window-breaking case was admissible in this action for the purpose of proving, not the falsity nor the truthfulness of the defendant's testimony, but the identity of the first case and the issues involved in it.

When the judgment roll was offered by the state the defendant's counsel, after first propounding the question, "Is it necessary to show the whole record?" said: "* * * the only thing they are entitled to show is that portion of the record which shows the condition of the case at the time this man testified. Now, if the Court feels differently, why, then you may admit the whole journal, all of it and the judgment roll, but as I understand it, if you admit the entire judgment roll and the transcript of the testimony, this jury will be trying the other lawsuit again." Some observations were then exchanged by the district attorney, the presiding judge, and defendant's counsel, in the course of which the latter stated: "* * * but the reason I am objecting to the introduction of the entire judgment roll is this: Included in that judgment roll are several things: our motion for a directed verdict and the ruling of the Court upon the same, and motion for a new trial and argument upon that, and surely they have no bearing upon the particular issue and the status of the case at the time this man testified. Now, in both instances the Circuit Court ruled against the defendant. Ultimately the Supreme Court reversed the Court upon its rulings, but I doubt here that the state is entitled to introduce in front of this jury those specific rulings of the Circuit Court which were adverse to the defendant, even though the Supreme Court did reverse it. That's the only objection I have to it. I have no other objection to any of it, if you exclude the

opinion of the Circuit Court upon those two questions, the motion for a directed verdict and motion for a new trial, and in both instances he gave a written opinion which is involved as a portion of that judgment roll. Now, as to the rest of it, I have no objection to it.'' The district attorney then suggested that the motion for a new trial and its accompanying affidavits be removed from the judgment roll, to which the defendant's counsel replied: ''I don't care as to that. The only point I object to, I object to those two opinions of the Circuit Court.'' After further colloquy he stated: ''So that the Court will understand my position: I have no objection to anything in the judgment roll except those long written opinions of the circuit judge.'' Thereupon the trial judge ruled: ''Then let the judgment roll be received without those, and let them be removed by the clerk.'' The opinions were removed and as thus altered the judgment roll was received as evidence.

We are clearly satisfied that the defendant voiced no objection to the receipt of the judgment roll which can support the present assignment of error; and, further, that the judgment roll was admissible for the purposes indicated in a preceding paragraph of this opinion.

It will be recalled from § 13-1119, Oregon Code 1930, which we quoted in a preceding paragraph, that ''the bill of exceptions, if there be one,'' shall constitute a part of the judgment roll; and it will also be recalled that the clerk did not incorporate the bill of exceptions in the judgment roll. Immediately after the latter had been received as evidence the district attorney produced the bill of exceptions and, addressing the presiding judge, said: ''The statute provides what shall be in the judgment roll and states that the bill of exceptions,

if any, must be in the judgment roll * * *. Now, I haven't any purpose in offering it other than to prevent the commission of error." Defendant's counsel thereupon declared: "I have no objection to the introduction of the bill of exceptions." It was then received. The instruction to the jury which we quoted in a preceding paragraph applied also to the bill of exceptions.

When the bill of exceptions was tendered there was attached to it a typewritten transcript of all the testimony received in the window-breaking case. Immediately following the admission of the bill of exceptions the district attorney, who apparently did not think that the receipt of the bill of exceptions included the transcript of evidence, sought to remove the latter from the former, and during his efforts said: "I don't know how I am going to get the thing segregated." Then the following occurred:

"The Court: What was your statement?

"Mr. Ray: I say this bill of exceptions is attached to the transcript in the Supreme Court.

"The Court: It is made part of it, isn't it? The testimony is made part of the bill of exceptions?

"Mr. Johnston: The whole thing is the bill of exceptions.

"The Court: It is all in then.

"Mr. Johnston: It is all in.

"Mr. Ray: All right."

From that point, as is clearly apparent from several observations made by the defendant's counsel during the receipt of the ensuing testimony, he regarded the transcript of the testimony as a part of the evidence in this case and as one of the exhibits. It will be recalled that the bill of exceptions was received without objection, and since the defendant regarded the tran-

script of testimony as a part of the bill of exceptions, he likewise made no objection to the latter.

We shall now state the course pursued with the judgment roll, bill of exceptions and the transcript of the evidence. The judgment roll was read to the jury and was taken into the jury room as one of the exhibits. The transcript of the testimony was not read, but was mentioned incidentally in the course of objections to the receipt of evidence offered by the state. It was also mentioned at the close of the case after the jury had retired, as we shall shortly show. The record does not indicate that the bill of exceptions was read to the jury; apparently after its receipt it was never mentioned except in the instruction to the jury previously quoted, and in an objection and ruling made at the close of the trial. We shall now quote that objection and ruling, adding before so doing that this ruling is also the one concerning the transcript of the evidence. Immediately after the jury had retired the defendant's counsel stated: "I take exception to the Court's sending to the jury room with the jury that portion of the state's exhibits consisting of the judgment roll, being that portion thereof which includes all of the testimony taken at the preceding trial." Thereupon the presiding judge stated: "I am going to avoid that exception now, then, since you have taken it, by directing the return of the bill of exceptions. Mr. Bailiff, will you bring back the bill of exceptions in that case?" The record indicates that the bill of exceptions was promptly returned whereupon the presiding judge declared: "Let the record show that the bill of exceptions including the transcript of all the testimony has been returned into court without being considered by the jury and it is not to go to the jury room." At this point defendant's

counsel stated: "I withdraw my exception to the fact that the bill of exceptions and the transcript were sent to the jury room."

We explained the above in order to facilitate an understanding of our disposition of the remaining assignments of error.

The third assignment of error is based upon the fact that the official court reporter, who had taken shorthand notes of the testimony given in the window-breaking case, was permitted to read a part of them in this case. The defendant's statement of this contention claims that error was committed when the reporter was permitted to "read to the jury the testimony of Carson and Newland and testify therefrom as to the testimony in substance of the other man, Moore, without a showing that those witnesses were deceased or out of the state of Oregon, or ill and unable to attend in person at the trial." The instructions to the jury stated: "There was some evidence given in this case by the court reporter reading the testimony of certain witnesses, I believe the witnesses Carson, Newland and Moore. That evidence was received for the purpose of advising you of the state of the trial, for the purpose of determining whether or not the testimony was material. The reading of that testimony by the court reporter was to show what the testimony of those witnesses was in that case at that time, and that reading of the testimony is not to be accepted by you as substantive evidence of those persons. In other words, you will have to judge the testimony and credibility of Carson, Newland and Moore from what they said upon the witness stand. That evidence was received only for the purpose of showing, if it could, the materiality of the testimony alleged to have been given by

Reynolds, and show the state of that case when that testimony of Reynolds was given."

The reporter, Richard N. Appling, before reading from his notes the challenged parts of the testimony given by the aforementioned witnesses, swore that he had taken accurate shorthand notes of all the testimony given in the window-breaking case. He was then asked whether Newland testified (in the window-breaking case) that he went from Portland to Eugene, November 15, 1937. At this point the defendant interposed an objection which is indicated by the language which we quoted from his present assignment of error. After the objection had been made the district attorney stated: "This evidence is offered solely for the purpose of showing the materiality, and if there is anything in there that bears on anything else that shouldn't be in, why, then, it is the duty of the Court to instruct the jury that the purpose for which all that is admitted is solely for the purpose of materiality." The presiding judge ruled that the testimony would be received "for the purpose of showing whether or not this testimony of the defendant was material." Then Appling read answers made by Newland to the questions submitted to him in the window-breaking case wherefrom it appeared that Newland, Carson and Moore upon reaching Eugene went to the defendant's office, introduced themselves to him as the men who had been sent as competent window breakers, discussed with him the City Barber Shop windows, conversed with him about some pictures of labor conventions on his office walls, and were shown by the defendant a 22 target pistol which hung from his shoulder in a holster. Further, Appling's reading of Newland's testimony showed that while the three lawbreakers were conferring with the

defendant, the latter had a telephone conversation with someone in the office of the Consolidated Freight Lines which concerned the discharge by the latter of an employee, and that during the course of the conversation the defendant said to the other party on the telephone that unless the discharged employee was returned to his employment he would tie up their system. Next, according to Appling, Newland testified in the window-breaking case that after the conference had continued for about three quarters of an hour V. Bailey, one of the defendant's co-indictees in the window-breaking case, joined the group, later left, and still later rejoined the group bringing with him R. W. Blaine, another of the indictees in the first case. According to Newland's testimony, as repeated by Appling, it was agreed during the conference that the men should be paid $60 for their work, and later Bailey brought the required sum and gave it to the three men.

The same course of questioning was pursued in regard to the testimony given in the window-breaking case by Carson whose testimony, as read by Appling, was substantially the same as Newland's with the exception which we shall now mention. When Appling undertook to read from his notes questions propounded to Carson concerning the defendant's gun, the trial judge, without any objection having been made, declared: "I don't see how that could be material." The district attorney then said: "We claim that complemented the testimony of the boys to the effect that they were up there." The trial judge concluded the matter by ruling that the testimony concerning the gun was immaterial, and added: "Let the testimony of this witness, as well as Newland's and this other person,

Carson, as to the pistol be stricken and the jury will disregard it.''

Moore's testimony was not read. Appling testified that Moore's was substantially the same as that of Newland and Carson. This method of bringing before the jury the substance of Moore's testimony obviously was adopted for the purpose of conserving time. The defendant made no objection.

After the testimony of Newland, Carson and Moore had been given in the window-breaking case anyone who heard it and was able to recall it would have been a competent witness to repeat what those men had said. In repeating it he would not have vouched for the truth of what the three men had said, but only for the accuracy of his repetition. The situation would have been no different had Appling sworn that upon some other occasion he heard these three men fire a rifle, sound an automobile horn or give an exclamation of pain. In all of those instances the fact that the gun made a report, that a word was spoken, etc., would have been the only fact which he could relate. By swearing that he had heard the groan he would not have attested that the individual was actually in pain. And so in this case, when Appling testified he vouched for only two facts, the first of which was that Newland, Carson and Moore had testified in the window-breaking case, and the second was that those men had given the testimony which he read from his notes. His use of his stenographic notes was merely a means of giving effect to what he knew he had truthfully and accurately recorded in the course of the window-breaking trial. That method of examination falls within the general category of the refreshment of a recollection. The subject is discussed in Wigmore on Evidence (2d), §§ 735 and

736. The rule has taken statutory form in our state: § 9-1907, Oregon Code 1930.

We repeat, Appling's testimony merely proved that Newland, Carson and Moore had testified in the window-breaking case and that they had given the testimony which he read from his notes. His testimony had no bearing whatever upon the verity or falsity of those witnesses' testimony. In fact, their testimony may have been wholly false and yet Appling's could have been wholly true. We add, however, that no one contends that his stenographic notes were inaccurate. The testimony of those three men, given in the first trial, was the circumstance or inducement that caused the defendant to testify. As the cause or inducement it was immaterial whether their testimony was true or false. Whether true or false it showed the issues into which the defendant ventured with his testimony.

In support of his contention that error was committed when the above-described course was pursued, the defendant cites Art. I, § 11, Oregon Constitution; subd. 8, § 9-226, Oregon Code 1930; *Re Rights to Waters of Silvies River*, 115 Or. 27, 237 P. 322; *Hansen-Rynning v. Oregon-Washington etc. Co.*, 105 Or. 67, 209 P. 462; *State v. McPherson*, 70 Or. 371, 141 P. 1018; *Beard v. Royal Neighbors of America*, 60 Or. 41, 118 P. 171; *State v. Walton*, 53 Or. 557, 99 P. 431, 101 P. 389; *New York Central Railroad Co. v. Stevens*, 126 Ohio St. 395, 185 N. E. 542, 87 A. L. R. 884. The constitutional provision above cited provides that in all criminal cases the accused has the right "to meet the witnesses face to face." The section of our code renders admissible the testimony of witnesses deceased, out of the state or unable to testify if given in a former proceeding between the same parties which concerned

the same subject-matter. In each of the above-cited Oregon decisions it was sought to show not merely that in the former case the missing person had given the testimony which the witness sought to repeat, but also to have the jury accept it as the truth; in other words, the proponent of the witness wanted to vouch for the credibility of both the witness and the absent declarant. In the instant case the state vouched only for the credibility of Appling. As already stated, it was immaterial to the state's purposes whether the testimony which he read from his notes was true or false. In all of the five above-cited cases the verity of the missing person's statements, which the witness sought to repeat, was the material item.

Let us see what other courts confronted with similar problems have done. From *People v. Lem You,* 97 Cal. 224, 32 P. 11, we quote:

"For the purpose of showing the materiality of the alleged false testimony of appellant, the prosecution offered evidence of the testimony which two witnesses named Rohn and Bevan gave at the said trial of said Wong Ark. * * * To this evidence appellant objected as incompetent, irrelevant and immaterial, because appellant, not being present when said testimony was given, had no opportunity to examine or cross-examine said witnesses, because said Rohn was living within the jurisdiction, and should have been called himself, and because, Bevan having since died, there is no rule by which his former testimony can be introduced in this cause. The court overruled the objections, and appellant excepted. The ruling of the court was right. The purpose was not to produce said testimony anew, as tending to prove the facts stated therein; it was offered merely for the purpose of showing as a fact that such testimony had been given, and it was expressly limited by the court to that purpose."

In *State v. Vandemark*, 77 Conn. 201, 58 Atl. 715, 1 Ann. Cas. 161, the defendant, who had been convicted of the crime of perjury, appealed and presented an assignment of error similar to that before us. In rejecting it as lacking merit, the court said:

"Evidence of the testimony actually given on the prosecution for conspiracy, offered for the sole purpose of showing the materiality of the false testimony alleged to have been given by the accused, and carefully limited as it was by the trial court to that purpose, was properly admitted."

In *People v. Macard*, 109 Mich. 623, 67 N. W. 968, the court said:

"The testimony of Henry Prame given upon the murder trial was read in evidence. This was for the purpose of showing the materiality of the testimony given by the respondent. The court, in its instruction, expressly limited the testimony taken upon that trial, outside of the respondent, to show the materiality of the alleged false testimony."

The conviction of the respondent (defendant) was affirmed.

In *Fletcher v. State*, 20 Wyo. 284, 123 P. 80, in affirming the defendant's conviction, the court said:

"The evidence of what the defendant and the prosecutrix testified to at the trial of the assault case was admitted over objection to show the alleged false testimony and its materiality, and the evidence there given by the prosecutrix was properly limited to the question of materiality by an instruction to the jury that it did not prove, or tend to prove, the falsity of the testimony upon which the perjury is assigned."

In *Dickerson v. State*, 18 Wyo. 440, 111 P. 857, 116 P. 448, the defendant, who had been convicted of the crime of perjury, presented upon appeal substantially

the same contention as the appellant. The charge of perjury was based upon a contention that the defendant testified falsely when in the course of a previous case in which he was accused of rape, he swore that he was not afflicted with the disease of gonorrhea at the time of the alleged offense. For the purpose of proving the materiality of this negative evidence, the state in the perjury trial was permitted to offer the testimony given in the rape case by the prosecutrix and a physician who examined her shortly after the alleged intercourse. The prosecutrix' testimony, as related by the court reporter, described the alleged assault, its circumstances, and the pains the prosecutrix endured immediately before she consulted a physician. The latter testified that she was suffering from a recent infection of gonorrhea when she called upon him. The court held:

"This evidence was competent upon the question of the materiality of defendant's evidence upon which the perjury is assigned, but only as inducement."

From *State v. Bissell*, 106 Vt. 80, 170 Atl. 102, we quote:

"State's Exhibit 7, a transcript of the testimony of Ethel Bissell given at the former trial, was offered and received solely for the purpose of showing that the alleged false testimony was given on a material issue. The grounds of respondent's objection and exception were that the evidence was incompetent, irrelevant and immaterial.

"It is a general rule that the materiality of alleged false testimony may be shown by the record of other testimony given in the cause. 48 C. J. 894, § 156; State v. Campbell, 93 Conn. 3, 104 A. 653. It is apparent that this evidence, or some of it, was material and relevant to the issue of the materiality of some of the

alleged false testimony. That is sufficient to sustain the ruling under a general objection.''

See to same effect *State v. Campbell*, 93 Conn. 3, 104 Atl. 653.

We know of no decisions which are not in harmony with the ones just reviewed. Certainly the defendant cited none. The rule of evidence which supports those decisions is the common one which renders admissible a variety of utterances, when the purpose is not to evidence the truth of the words spoken, but to serve some purpose in which their truth or falsity is immaterial. In all those instances the hearsay evidence rule has no application and the utterance is admissible.

Since Appling, who was the only person whose credibility was material, went upon the witness stand and met the defendant ''face to face'', the requirements of Art. I, § 11, Oregon Constitution, upon which the defendant relies were met. Section 9-226, subd. 8, of our code, in our opinion, has no application to this situation because the state was not endeavoring, through the use of Newland's, Carson's and Moore's testimony, to evidence the truth of any word which they spoke.

■ The above analysis and consideration of the precedents convinces us that Appling's testimony was admissible for the limited purpose of proving materiality. Newland's, Carson's and Moore's testimony, as repeated by Appling, could not be deemed evidence of any fact which they mentioned. The state's offer of Appling's testimony was limited to the purpose just indicated, and the instructions to the jury which we quoted properly confined the jury's consideration of that testimony to the single purpose for which it was admissible. The instructions are not criticized by the defendant.

This assignment of error, in our opinion, is without merit.

In his fourth assignment of error the defendant contends that error was committed when Newland, Carson and Moore were permitted, subsequent to Appling's testimony, "to testify in person again as to the same facts outlined in their previous statement read to the jury." After Appling had given the testimony just mentioned Newland, Carson and Moore, as witnesses for the state, swore that on November 15, 1937, they visited the defendant's office, conferred with him about the breaking of windows and were paid $60 in consideration of their agreement to stone the City Barber Shop windows. Appling's testimony and the judgment roll were not received as evidence of what had occurred on November 15. Their application by the jury was limited, and properly so, to other purposes. The testimony of these three men was necessary to prove that they had conferred with the defendant in his office on November 15, and thereby to sustain the charge of the indictment that the defendant testified falsely when, in the previous case, he swore that he had not seen the men on that day. Appling's testimony was not concerned with the events of November 15—its subject-matter was the window-breaking trial. Newland, Carson and Moore when upon the stand were not concerned with that trial, but with the events of November 15, 1937. We find no merit in this assignment of error.

The fifth assignment of error is based upon a contention that error was committed when Floyd Hall, the aforementioned witness for the state, was permitted to testify that he had a telephone conversation with the defendant on November 15, 1937. In an affidavit which the state filed in resisting the defendant's mo-

tion for a new trial in the window-breaking case (mentioned in a preceding paragraph of this opinion), Hall deposed to the circumstances of the purported telephone conversation. That affidavit became a part of the judgment roll, and since that is true the defendant argues that Hall's testimony was inadmissible. Hall was the manager of the Eugene division of the Consolidated Freight Lines and on November 10 had demoted one of the company's employees, Fred Stump, from his position as driver. During Hall's absence from his office November 15 the defendant sought to reach him on the telephone, and not succeeding, left a request for Hall to telephone to him upon his return. About 5:00 or 5:30 of that day when Hall returned to his office, according to his testimony, he spoke to the defendant over the telephone. The defendant remonstrated with him over Stump's demotion and demanded that he be immediately returned to his position as a driver. Being met with that demand, Hall asked the defendant for the privilege of discussing the situation with him in his office. According to Hall, he visited the defendant in the latter's office on the morning of November 16. Testifying further, he said that upon the former trial he declared that he made this visit to the defendant's office a few minutes after the telephone call, that is, on November 15, but that after that trial and upon consulting his records he found that the visit was not made until November 16. He insisted, however, that the telephone conversation was on November 15. In Hall's above-mentioned affidavit (a part of the judgment roll in the window-breaking case) he related the circumstances in substantially the same manner as in this case.

■ We have already stated that the judgment roll which contained this affidavit was received as evidence only for the purpose of proving the identity of that case and of indicating the materialty of the defendant's testimony in it, but not as evidence of any of the controverted incidents of November 15, 1937. When the judgment roll was offered the defendant limited his objection to two opinions of the circuit court judge which had been included by the clerk as a part of the judgment roll. While the opinions were being removed the district attorney, referring to Hall's and other affidavits included in the judgment roll (as accompaniments to the motion for a new trial), said: "I think it would be perfectly proper for the Court to eliminate the affidavit for motion for a new trial." Defendant's counsel replied: "I don't care as to that. The only point I object to, I object to those two opinions of the circuit court." Hall's affidavit in the judgment roll was not evidence of the truth of any of its recitals. The instruction to the jury concerning the judgment roll stated that that document could not be considered as evidence of anything that happened on November 15, 1937. Hall's testimony was material because it showed that the defendant was in his office November 15 at about 5:30. It will be remembered that Newland, Carson and Moore testified that they overheard a telephone conversation between the defendant and the manager of the Consolidated Freight Lines concerning some discharged employee. Hall's testimony, therefore, tended to show that the defendant was in his office when the three men called. The defendant claimed that he was not in his office between 5:00 and 5:30 in the afternoon of November 15. It will, therefore, be seen that this testimony was relevant to the issues presented by the

parties. Before expressing our conclusion, we add that the only objection which the defendant made during the examination of Hall was the following: "Object to the form of the question as leading." The objection was promptly sustained. We are clearly satisfied that this assignment of error is wholly lacking in merit.

The sixth assignment of error follows: "The court erred in permitting the testimony of one V. D. McCauley to go to the jury with reference to conversations and actions between himself and one Ray W. Blaine who is not on trial in this action, and which conversations and actions were not in the presence of the defendant-appellant, Hugh Reynolds, and are not in any way material or relevant to the issue in the present case." McCauley, who was secretary-treasurer of the local Journeymen's Barber Union, was one of the four indictees in the window-breaking case. He repeated nothing which had been said between himself and Blaine. So far as the record indicates the two men remained silent when they met. Therefore, his testimony is not affected by the hearsay evidence rule. Blaine was the delegate of the barbers' union to the Eugene Central Labor Council and was another of the indictees in the first case. McCauley testified that on the evening of November 15, 1937, he was in his home and that while there Blaine visited him for a moment. At that time, according to McCauley, he gave Blaine $25 in currency and a check for $35 payable to the Central Labor Council. He further said that the check was never cashed and that November 29, 1937, the defendant returned it to him whereupon he destroyed it. Upon cross-examination he testified that he was the individual who had collected the money from the employer barbers as well as from the union members

which had been used for action against nonunion shops. It will be recalled that previous testimony had showed that Blaine was present when it was agreed that Newland, Carson and Moore should be paid $60 for breaking the City Barber Shop windows, and that he left the conference shortly after this agreement had been made. Blaine testified that after the conference with the three lawbreakers he drove to McCauley's house and there received "some money in currency and a check" which he delivered to Verne Bailey in the defendant's office while the defendant was present. Bailey was the defendant's assistant. We shall not pause to state the manner in which cash was shortly substituted for the check. This testimony was, of course, received for the purpose of indicating that the meeting in the defendant's office was material in the windowbreaking case.

■ In support of his contention that McCauley's testimony was inadmissible, the defendant cites §§ 9-202 and 9-226, subds. 3 and 6, Oregon Code 1930; *State v. Day*, 22 Or. 160, 29 P. 352; *State v. Ah Lee*, 18 Or. 540, 543, 23 P. 424; and Underhill, Criminal Evidence (4d) p. 251, § 154. We examined those code provisions and authorities, but failed to find anything in them which would indicate that McCauley's testimony that he handed to Blaine $25 in cash and a check for $35 was inadmissible. That testimony, we believe, was relevant to the issue of materiality. The assignment of error, in our opinion, is without merit.

■ The seventh contention presented by the defendant argues that error was committed when Carson was permitted to testify that he saw upon the defendant's office walls two pictures of labor conventions, and that upon recognizing some of the individuals in the groups

he and the defendant conversed about them. He did not relate the conversation. This testimony was nothing more than a description of the room in which Carson claimed he met the defendant. Possibly, since no one contended that Carson had ever been in the room before, some of the jurors may have inferred that, since he was able to describe the room in substantially the same manner as that in which some of the defendant's witnesses later described it, he must have been present at the time in question. If they so inferred, the inference was legitimate and the testimony was admissible for that purpose.

■ The eighth assignment of error says: "The Court erred in permitting the witness for the state, Nelson F. Whipps, to testify in detail as to a pistol, a book and various types of guns found in the possession of the defendant." Whipps' testimony was very brief. As transcribed, it covers only one typewritten page and five lines of another. It indicates that as a deputy sheriff Whipps assisted in arresting the defendant (ostensibly upon the first charge) at the latter's residence, and that at that time the defendant's coat was lying on a table. Whipps was then asked and answered as follows:

"Q. What else was on the table? A. As I recall there was—his vest was on the table and an automatic pistol and a book.

"Q. State whether or not there was a holster with the pistol? A. There was, a light tan.

"Q. What kind of a pistol was it? A. I didn't examine the gun. It appeared to be what is known as a target pistol, sort of—about that long (indicating). And there is several types of guns that resemble each other quite a bit. There is the Remington and the high standard."

That ended the witness' testimony. He said nothing more. We quoted everything he said about guns and a book. Before he stopped no objection whatever had been made. However, after he had finished, the defendant's counsel said: "If the Court please, we object to a rambling description." The district attorney acquiesced by saying, "Yes" and the Court concluded the matter with ruling: "Yes, objection sustained." No motion was made to strike from the record anything that Whipps had said, nor to instruct the jury to disregard any of it. Following the ruling just mentioned, Whipps was asked nothing more, but the defendant made a brief argument—not concerning the admissibility of Whipps' testimony, but its cogency. Shortly the situation took the form of a colloquy between the defendant's counsel, the district attorney and the presiding judge, the subject-matter being whether Newland, Carson and Moore were accomplices in this case and whether their testimony needed corroboration. At the end of the colloquy the defendant stated that he did not care to cross-examine the witness. It is manifest that this assignment of error is based upon no unfavorable ruling. It will be recalled that earlier in the trial the presiding judge, upon his own motion, had stricken some testimony concerning the same gun. Presumably he would have sustained an objection to this testimony had one been made.

Before considering the ninth assignment of error, we shall dispose of the tenth.

The tenth assignment of error is predicated upon a ruling which, over the defendant's objection, permitted the state in rebuttal to present some additional testimony by Floyd Hall, the witness who is mentioned in preceding paragraphs. The defendant's objection

was two-fold: first, that the proffered testimony was not rebuttal in nature, and, second, that since an affidavit by Hall, which related the same facts, was a part of the judgment roll in the first case, which had been received as evidence in this case, Hall's testimony was inadmissible. The affidavit to which the objection referred was filed by the state when it was resisting the defendant's motion for a new trial in the first case; the clerk had made it a part of the judgment roll. We mentioned it before.

■ In presenting his defense, the defendant swore that he had no conversation with Hall, November 15. One of his witnesses was Fred Stump, the truck driver previously mentioned and concerning whom the telephone conversation and office conference had taken place. Stump swore that he did not mention his discharge to the defendant until after 7:00 p. m., November 15, and gave other testimony which indicated that the telephone conversation could not have occurred until November 15. He further declared that in April, 1938, (the motion for the new trial was filed in April, 1938) Hall sought to persuade him to change his version so as to make it appear that Stump spoke to the defendant before 5:30 p. m., November 15. In the challenged rebuttal testimony Hall, after saying that he spoke to Stump April 15, 1938, was asked:

"I will ask you whether or not at that time, you asked Fred Stump when he first saw Reynolds with regard to your having taken him off as a driver, and whether or not at that time he said to you 'It was on the evening of November 15, Monday, at about 5:30.'? He answered, "Yes, sir." At that juncture the defendant made the objection which is the basis of this assignment of error. After the objection had been overruled the witness testified that on November 15,

in the course of the conversation, Stump told him that after he had complained to the defendant about his discharge he and the defendant went to the latter's office where the defendant sought to reach Hall on the telephone. This testimony obviously was offered for the purpose of Stump's impeachment. It could not have been presented except upon rebuttal, and was therefore rebuttal evidence. Hall's affidavit containing the substance of this testimony, and forming a part of the judgment roll as we have already said, was not evidential (in this case) of any fact mentioned in the affidavit. Therefore, the presence of the affidavit in the judgment roll was no reason for excluding the testimony. This assignment of error is without merit.

 The remaining assignment of error is based upon the ruling which denied the defendant's motion for a directed verdict. That motion was made at the close of the state's presentation of its evidence but before the defendant had presented any. The grounds of the motion, as stated in this assignment of error, are "for the reason that the evidence, as a matter of law, was insufficient to warrant the verdict of guilty, as all of the evidence introduced against the defendant, which was in any way material or relevant to the issue, was the testimony of alleged accomplices at the former trial." After the motion was denied the defendant, besides testifying in his own behalf, introduced other evidence in support of his plea of innocence, following which the state presented the rebuttal evidence which we have already mentioned. After both parties had rested, the motion for a directed verdict was not renewed. From *State v. Adler*, 71 Or. 70, 142 P. 344, we quote:

"The defendant first urges as ground for appeal the refusal of the court to direct a verdict of acquittal at the close of plaintiff's testimony because Joe Bloch, the main witness as to the delivery to Adler, was a thief, and that defendant received the stolen goods from him; and, being an accomplice, there was no evidence corroborating him which would tend to connect defendant with the commission of the crime. In a criminal trial a proceeding in the nature of a motion for nonsuit is not recognized under our code, unless the defendant had rested his case."

The rule stated in the last sentence of the quoted language is the one generally applied as is seen from the following taken from 16 C. J., Criminal Law, p. 938, § 2305:

"Although there is authority to the contrary, as a general rule a motion for a directed verdict, made at the close of the case for the prosecution and overruled, is waived by defendant proceeding with the trial and introducing evidence, unless the evidence introduced has no bearing on the merits of the case."

■ Although the reason stated in those two authorities suffices to reject this assignment of error, we shall indicate our views upon the merits and assume that the motion had been renewed after both sides had rested.

■ The defendant numerous times suggests that Newland, Carson and Moore were accomplices of the defendant and that, therefore, corroboration of their testimony was necessary to justify a finding of guilt. Section 13-935, Oregon Code 1930, prohibits conviction upon the testimony of an accomplice unless he be corroborated. Those three men were accomplices of the defendant in the commission of the window-breaking crime, but they did not participate with him in any way

when he gave the alleged false testimony. To the crime of perjury they were strangers, if not victims. It is clear that they were not his accomplices in the commission of the present crime. *State v. Coffey,* 157 Or. 458, 72 P. (2d) 35. Therefore, § 13-935 has no application to this case.

■ Section 9-902, Oregon Code 1930, in stating the quantum of proof that is necessary for a finding of guilt where the charge is perjury, states that the indictment must be sustained "by the testimony of two witnesses, or one witness and corroborating circumstances." Newland, Carson and Moore by their testimony sustained the averments of the indictment. Blaine swore that he saw the defendant in his office conferring with these three men November 15. Hall's testimony, which we have already mentioned, was direct proof of the defendant's presence in his office at the time Newland, Carson and Moore swore that they conferred with him. From McCauley's testimony concerning the check and its return by the defendant, an inference in support of the indictment in the present case is permissible. Thus, the requirements of § 9-902 were met.

But the defendant argues that since this court held that the evidence in the window-breaking case was not sufficient to justify his conviction of that crime, he must be acquitted of the present charge. In support of his contention, he cites *Allen v. United States,* 194 Fed. 664, 39 L. R. A. (N. S.) 385; *Chitwood v. United States,* 101 C. C. A. 342, 178 Fed. 442; *United States v. Butler,* 38 Fed. 498; *State v. Smith,* 119 Minn. 107, 137 N. W. 295; *Murff v. State,* 76 Tex. Cr. 5, 172 S. W. 238.

■ The charge in the present case, unlike the charges in the cases upon which the defendant relies, is not based upon the main facts in issue in the first case,

but upon a collateral fact. The collateral fact could be adverse to this defendant, as it was found to be by the jury, without impairing the result in the first case. From an extensive annotation in 37 A. L. R. 1290, we quote:

"It is generally held, without dissent, that one's acquittal upon a criminal prosecution is no bar to his subsequent prosecution for perjury committed at the former trial, where his testimony relates merely to collateral matters, and its falsity is not necessarily inconsistent with his innocence of the former crime."

In support of that statement the annotator cites, among others, *Chitwood v. United States,* supra, and *State v. Smith,* supra, being two of the decisions upon which the defendant relies. We believe that those two decisions support the rule stated in the annotation. Our examination of the authorities persuades us that the annotator correctly interpreted and set forth in the above-quoted language the rule universally employed when the perjury charge is concerned with some part of the testimony of the defendant in the first case, which could be false without impairing the judgment of not guilty entered in it. That annotation follows the reprint of *People v. Niles,* 300 Ill. 458, 133 N. E. 252, 37 A. L. R. 1284, in which the court, in a decision which shows careful analysis, held that a previous acquittal is not a bar to a prosecution for perjury, although a finding of guilt of the latter crime necessarily imports a contradiction of the verdict in the first case. It is unnecessary for us to go as far as the Illinois court went because the perjury indictment (in this case) was based upon facts which were merely collateral in the first case. It is our opinion that the defendant's acquittal in the first case was no bar to his prosecution in the perjury indictment.

Moreover, additional testimony of a substantial character was offered in the present case. We quote from the appellant's brief: "The testimony of an additional accomplice, Ray W. Blaine, to the same facts as previously testified to by Carson, Newland, Moore and V. D. McCauley * * *. The state also called additional witnesses, to-wit: Mrs. Hall, wife of Floyd Hall, and the witness John Prociew, who attempted to corroborate Hall's testimony * * *." In other words, the finding of guilt in this case is based upon more testimony than was present in the first trial. We are satisfied that no error was committed when the defendant's motion for a directed verdict was over-ruled.

We have not overlooked the fact that the defendant's brief states that when the circuit court passed upon the motion for a new trial which the defendant filed in this case, it should have sustained the motion even though no objection was made when the judgment roll was received as evidence. In presenting this argument, he insists that error was committed when the judgment roll was received, and argues that under the pretense of proving materiality much testimony given in the first case was received that had no bearing upon that issue.

We believe that the defendant had two reasons for omitting objections to the receipt of the judgment roll and the other items of evidence which he now insists were inadmissible. First, he proposed to contend in this case, as in the first, that without corroboration the testimony of the defendant's alleged associates in window breaking could not authorize a conviction, and he, therefore, desired that enough of the record in the first case be received to afford a basis

for that contention. And, second, he proposed to argue, as he has, that the evidence in this case is substantially the same as in the first and that, therefore, a judgment of guilt in this case amounts to an impeachment of the finding of not guilty entered in the first. In passing upon other contentions, we stated our belief concerning the merits of the legal propositions which underlie those contentions.

■■ It is true that a new trial should be granted by the circuit court if inadmissible testimony prejudicial to the defendant was received, even though no objection was made to it, *State v. Bosch,* 139 Or. 150, 7 P. (2d) 554. But this being a court of review, no purported error occurring during the course of the reception of the evidence will here be considered unless a ruling concerning it was made at the time of its receipt or rejection. Rulings upon subsequent motions for a new trial will not suffice. The only substantial evidence received in the circuit court which, possibly, was unnecessary to the issue of materiality was the testimony concerning the gun and the part of the judgment roll made up of the motion for a new trial and the affidavits filed in support of and in resistance to it. As we have already indicated by quotation from the record, the district attorney offered to eliminate the motion and its affidavits from the judgment roll, but the defendant did not care to have that done. Possibly his reason is indicated in the preceding paragraph. Part of the testimony concerning the gun was stricken from the record by the presiding judge *sua sponte,* and it is reasonable to believe that an objection to Whipps' testimony would have been sustained had one been made. We are by no means certain that the motion for a new trial and the affidavits filed concerning it were prejudi-

cial to the defendant. The testimony concerning the gun seems immaterial. If the regularity of the order overruling the motion for a new trial were before us we would be compelled to say that it was properly denied.

The above is our disposition of all of the contentions and assignments of error presented by the appellant. We have found no cause for a reversal. We have not mentioned herein every authority cited by the defendant, but all of them received careful attention.

It follows from the above that the judgment of the circuit court must be affirmed.

RAND, C. J., and KELLY and BELT, JJ., concur.

BEAN, J., did not participate in this decision.

BAILEY and LUSK, JJ., not sitting.