Argued April 20; affirmed May 11, 1948

# STATE *v.* JEANNET

192 P. (2d) 983

*Leo Levenson,* of Portland, argued the cause for appellant. With him on the brief was Irvin Goodman, of Portland.

*Charles E. Raymond,* Deputy District Attorney, and *Philip M. Bagley,* Deputy District Attorney, both of Portland, argued the cause for respondent. With them on the brief was John B. McCourt, District Attorney, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY and BRAND, Justices.

KELLY, J.

The defendant Fred Jeannet, a chiropractic, was indicted, tried and convicted in Multnomah County, Oregon, upon a charge of manslaughter—abortion, and was sentenced to the penitentiary for a term of not to exceed three years. From such judgment he prosecutes this appeal.

The testimony introduced by the state was to the effect that the decedent, Violet M. Givens, who was pregnant, went with her husband, Earl Givens, from their home in Salem to Portland for the purpose of having an abortion performed. The defendant testified that Mrs. Givens first came alone to his office at about 12:00 noon of January 5, 1946. Mr. Givens testified that about nine o'clock in the morning, his wife, the decedent, went upstairs and made an appointment

with the defendant to have an abortion committed at twelve; and that at twelve o'clock his wife again went upstairs and defendant then examined her, packed her with cotton and told her to come back at five; that at five, he, Givens, accompanied his wife to defendant's office and remained in the reception room. Mr. Givens further testified that in about five minutes after their arrival at the defendant's office, the defendant called the decedent, Mrs. Givens, into his office and that she went in there and was in there "probably forty-five minutes, something like that."

Mr. Givens also testified that while in the reception room, he could hear them talking, "mumbling voices", but couldn't understand anything. He also testified that he heard noises "like instruments clinking and stuff like that" * * * "like metal hitting upon metal and laying on glass and stuff like that"; also that, "every once in a while the nurse would run from the room where my wife was in across the hall * * *", and "she would come out of the doctor's office through the reception room, get the stuff and go back into the doctor's office."

We quote from Mr. Givens' testimony:

"Q. Now what happened after forty-five minutes?

A. After approximately that time Dr. Jeannet come to the door and said I could see my wife now.

Q. What did you do?

A. I went in to the room. She was lying on a small low table about a foot high and about a foot and a half wide, and she was complaining terrible, just moaning and practically screaming that her stomach hurt. Dr. Jeannet here was adjusting some kind of pads on her back and on her stomach."

Mr. Givens also testified that at the end of the

table in the room where the defendant, the decedent and Mr. Givens himself were, there was a bucket that the defendant said contained "the stuff that he had taken out of her". "He said it would have been twins and it was in the bucket." Mr. Givens also testified that when his wife went upstairs to see the defendant, she had $150.00, and when she came back down, she didn't have a cent.

After leaving the defendant's office, Mr. and Mrs. Givens came to Salem. Mrs. Givens' condition caused her mother to call Dr. Marion F. Mayo, who caused the decedent to be taken to the Deaconess Hospital and later Dr. E. V. Fortmiller was called in as a consultant.

On January 10, Mrs. Givens was operated on by Dr. Fortmiller assisted by Dr. Mayo.

According to their testimony, they were unable to find a fetus, but did find a condition of general peritonitis extending all through the abdominal cavity, a puncture wound in the top of the uterus; and that the small intestine or ilium just above the uterus was torn almost in two.

Mrs. Givens died on Sunday, January 13, 1946.

In fairness to the defendant, we will say that in his testimony he denied that he was in his office during the morning of the 5th day of January, 1946, or that he performed any operation upon decedent. His testimony is to the effect that he treated her by giving her a bimanual examination and by the use of short wave diathermic machine.

Defendant presents two assignments of error. His first assignment is stated thus:

"The court erred in refusing to allow defendant's motion for directed verdict at the conclusion of the state's case."

In effect, the indictment in this case charges that the operation performed by defendant upon the body and womb of Violet M. Givens with intent on the part of defendant to destroy her unborn child did thereby cause and produce the death of her the said Violet M. Givens.

■ The term corpus delicti means the body of the crime, or, to state it differently, that the crime charged has actually been committed by some one. It is made up of two elements: first, that a certain result has been produced, as that a human being has died; and second, that some one is criminally responsible for the result. *State v. Henderson,* 182 Or. 147, 184 P. (2d) 392.

■ As applied to homicide cases, the term corpus delicti has at least two component elements: first, the fact of death; and second, the criminal agency of another person as the cause thereof.

As above stated, the person, whose death is charged as having been caused by the defendant herein, was Violet M. Givens. The record is replete with proof of her death. Her mother testified that she was with her when she died.

Dr. Fortmiller testified that she died the Sunday following the operation that he performed with the assistance of Dr. Mayo. Dr. William L. Lidbeck testified that on the 14th day of January, 1946, he performed an autopsy upon the body of Violet M. Givens.

Dr. Mayo testified that Mrs. Givens died on Sunday following the operation that with her assistance Dr. Fortmiller performed, and that operation was performed on Thursday.

As to the criminal agency of another person being the cause of her death, it is stipulated in the record that Violet M. Givens was pregnant prior to January

5, 1946. The testimony discloses that Dr. Fortmiller and Dr. Mayo failed to find the fetus in her womb when they operated and Dr. Fortmiller testified that the cause of her death was "generalized peritonitis infection of the abdominal cavity"; that peritonitis was caused by an instrument that had been forced through the top of the womb into the bowel. Dr. Fortmiller also testified that, in his opinion, it was due to curettement of the uterus, the instrument having accidently gone through the fundus of the uterus and into the bowel.

■ Assuming, without deciding, that decedent's husband was an accomplice, we think that, aside from his testimony, there was substantial testimony upon which the jury could base a finding that the corpus delicti has been proved. As to the corroboration of his testimony, we should bear in mind that

"the corroboration necessary to sustain the testimony of an accomplice need not go to the full extent of establishing the crime beyond a reasonable doubt wholly independent of the confederate's testimony. It is only necessary to corroborate him in material particulars. If the rule were otherwise, the testimony of the accomplice might as well be excluded as so much surplusage." *State v. Haynes,* 120 Or. 573, 577, 253 P. 7.

■ Upon being shown eight instruments by the use of which medical witnesses testified an abortion could be produced, Mr. Givens testified that upon his visit to the defendant's office he observed similar instruments upon the desk. The defendant thereafter testified that he had such instruments and many more in his office. The state introduced an order given by the defendant to decedent and her husband for medicine to allay pain. Defendant admitted giving the order to them.

As shown above, Mr. Givens testified that his wife was in the operating room of defendant's office for forty-five minutes; that thereafter he was admitted and found his wife stripped of her street clothing with a sheet about her person, and that she way lying upon a low bench or couch. The defendant corroborated that testimony. Mr. Givens testified that an abortion was committed upon his wife, and, as we understand the testimony of the three physicians, Drs. Mayo, Fortmiller and Lidbeck, they corroborated Mr. Givens in that regard.

■ In thus discussing defendant's first assignment of error, we are not unmindful that "in a criminal trial a proceeding in the nature of a motion for nonsuit is not recognized under our code, unless the defendant had rested his case." *State v. Reynolds,* 164 Or. 446, 480, 100 P. (2d) 593, citing and quoting *State v. Adler,* 71 Or. 70, 142 P. 344. We have however followed the course taken in the Reynolds case and have indicated our views on the merits as if the motion had been introduced after both sides had rested.

■ Defendant's second assignment of error is as follows:

"The court erred in refusing to submit appellant's requested instruction No. XI, as follows:

I instruct you that where it appears from the evidence that two or more causes have been the cause of the death of Mrs. Givens, and that it is just as probable that some cause for which the defendant was not responsible was the real cause of said death as it is that some cause as charged in the indictment was the real cause, it is not for you to guess or speculate between these several causes. Therefore, if you are not satisfied beyond a reasonable doubt and to a moral certainty that the death of Violet M. Givens was caused by acts of the de-

fendant as charged in the indictment you will return a verdict of not guilty."

It is evident that the above quoted instruction was not carefully prepared, its tautology is confusing; being a cautionary instruction, whether or not it should be given was discretionary with the trial judge; and he did not err in failing to give it.

We find no reversible error. The judgment of the circuit court is affirmed.